CENTRAL COUNCIL OF the TLINGIT & HAIDA INDIANS OF ALASKA, and Sealaska Corporation, Plaintiffs-Appellants,

v.

CHUGACH NATIVE ASSOCIATION and Chugach Natives, Inc., Defendants-Appellees.

No. 74–1453.

United States Court of Appeals,
Ninth Circuit.

Sept. 5, 1974.

Lawrence T. Feeney (argued), Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, Alaska, for plaintiffs-appellants.

Clark S. Gruening (argued), McCutcheon & Gruening, Anchorage, Alaska, for defendants-appellees.

Before KOELSCH, CARTER and CHOY, Circuit Judges.

CHOY, Circuit Judge:

This is a suit brought by the Central Council of the Tlingit & Haida Indians and their regional corporation, Sealaska Corp., to compel arbitration of a boundary dispute with the Chugach Natives under § 7(a)[1] of the Alaska Native Claims Settlement Act. The district court held the suit was barred by laches, and this appeal ensued. We reverse.

The Native Claims Act grants the Native peoples of Alaska substantial amounts of money and forty million acres of land as compensation for the Natives' aboriginal land claims. To administer the property and money, the Act authorizes the creation of twelve regional corporations which are to correspond to the areas inhabited by the various Native groups. The Tlingits' and Haidas' Sealaska Corp. and the Chugachs' Chugach Natives, Inc., are the two corporations established for those peoples' regions.

The statute, in § 7(a), sets forth the procedure for determining the boundaries of the twelve regions.

For purposes of this chapter, the State of Alaska shall be divided by the Secretary [of the Interior] within one year after December 18, 1971, into twelve geographic regions, with each region composed as far as practicable of Natives having a common heritage and sharing common interests. . . . Any dispute over the boundaries of a region or regions shall be resolved by a board of arbitrators consisting of one person selected by each of the Native associations involved, and an additional one or two persons . . . to be selected by the arbitrators selected by the Native associations involved.

The Tlingits and Haidas basically reside in the southeastern portion of the state—the relatively populous panhandle between Canada and the sea—from near Yakutat and the 141st meridian southward. The Chugachs are their immediate northerly neighbors occupying the area along the Gulf of Alaska around Prince William Sound and Valdez to the west near Cook Inlet. On December 11, 1972—prior to the deadline in § 7(a)—the Secretary issued his map setting the regional boundaries; the border between the two regions involved in this case was established at the 141st meridian. Appellants, however, claim that an approximately 150 mile stretch of land along the coast from the meridian to the Copper River more properly belongs in their region. Though the land is largely uninhabited, the Tlingits and Haidas assert the area has important cultural and historical significance to them.

Sealaska first brought its claim to light just after it was formed, in June, 1972. During the summer months the chairman of Sealaska's boundary committee repeatedly tried to arrange negotiations over the question with the president of the newly-formed Chugach Natives, Inc., Cecil Barnes. Barnes never declared outright opposition to the proposal for negotiations but merely demurred, explaining that he was unable to gather an opinion from his corporation's Board of Directors on the issue.

1.  43 U.S.C. § 1606(a).

By November no progress had been made. Sealaska complained to the Interior Department, and Barnes also wrote the Department setting forth the Chugach argument for the 141st meridian boundary.

In December the Secretary notified the regions of his § 7(a) decision. In a letter accompanying his map, the Secretary explained that if arbitration were not completed under § 7(a) by March 15, 1973, the Department would use the map "in its administration of the Alaska Native Claims Settlement Act of 1971." This was apparently an effort to set an arbitration deadline. While Sealaska protested the Secretary's authority to set such a statute of limitations, it proceeded formally to demand arbitration on January 24, 1973. Chugach Natives, Inc. did not respond. A second demand was made on April 9, and when there was again no response, the present suit was filed on May 1, 1973.

The appellees offer a number of justifications for the district court's decision to dismiss the action, but only three merit full discussion.

■ First, they contend that the Secretary's administratively-set deadline of March 15, 1973 is binding. The district court gave this factor some weight. The trouble with this, however, is that there is absolutely no authority for the Secretary to establish such a cutoff date in § 7(a) or anywhere else in the statute. Indeed, it would be contrary to the expression of the framers of the Act that, in §§ 7 and 8, they had "adopted a policy of self-determination on the part of the Alaska Native people."[2] Thus, even assuming the deadline was intended to apply to the regional corporations rather than being solely for the Secretary's own administrative purposes, it cannot bind this court.

■ For a similar reason, the deadline cannot be defended as an adminis-

trative "interpretation" to which we should accord deference under cases like Eby v. Reb Realty, Inc., 495 F.2d 646, 649–650 (9th Cir. 1974). There is no term here—like the statutory definition of "creditor" in *Eby*—which requires interpretation.

■■ Secondly, appellees argue that the suit is barred by the traditional doctrine of laches. Again, we cannot agree. The two requisites for the applications of laches are well known:

> Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.

Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).[3] There is a sufficient showing of neither here. Chugach Natives, Inc. expressed an apparent readiness to negotiate the dispute well into the fall of 1972. Up to then, Sealaska cannot be held responsible for forbearing to sue to compel arbitration, for it thought the more desirable avenue of negotiation was open. *See* West Los Angeles Institute for Cancer Research v. Mayer, 366 F.2d 220, 228 (9th Cir. 1966), cert. denied, 385 U.S. 1010, 87 S.Ct. 718, 17 L. Ed.2d 548 (1967). The November 10th letter, which simply reiterated the Chugach argument to the Department of the Interior, hardly changed that. Shortly thereafter, Sealaska demanded arbitration, and its brief delay in filing and noticing the suit—in part, occasioned by the silence of the Chugach organizations —was hardly unreasonable.

Equally, appellees failed to carry their burden[4] to prove prejudice. While it is claimed that much time and money was expended in reliance on Sealaska's failure to sue for arbitration, the Chugachs present no specific proof of other than minimal reliance during the time *preceding* notice of the suit.

2. Conf.Rep.No. 92–746, 92d Cong., 1st Sess. (1971), 1971 Code Cong. & Admin.News at p. 2250.

3. *Accord, e. g.*, Hecht v. Harris, Upham & Co., 430 F.2d 1202, 1208 (9th Cir. 1970).

4. *See* Costello v. United States, 365 U.S. at 282, 81 S.Ct. 534.

■ Lastly, appellees argue that the structure of the Act, involving a coordinated set of deadlines for various actions, demands that we adhere to a cut-off date near that set by the Secretary.[5] To describe the operation of this complex piece of legislation in understandable terms would outreach the reasonable bounds of this opinion. Suffice it to say that the Act prescribes a number of significant completion dates with those most immediately proximate to the commencement of this litigation occurring in December, 1973. We readily agree that it might upset the sequence of the Act were we to ignore the importance of these dates in considering a plea of laches. However, this lawsuit, filed in May, was not begun so near the December, 1973 deadlines as to endanger the administration of the statute.

Of course, those dates have now passed, but that does not alter our conclusion. We are required to view the case from the time of its filing and notice.

Declaring that these arbitration suits will be barred only if unreasonably delayed is not, we realize, an ideally precise solution. But Congress, which appears to have inadvertently failed to set a statutory deadline for arbitration, is better equipped to impose a precise solution, and further entreaties are best addressed there.

■ One collateral issue remains. Chugach Natives, Inc., asserts that the Secretary is required to be joined as a party under F.R.Civ.P. 19(a). We disagree, for neither condition of the rule is met. Complete relief can be granted without the Secretary's presence, and the Secretary claims no interest which must be protected in these proceedings. *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1604 (1972).[6]

Reversed with direction to order the parties to arbitration forthwith.

---

5. By that date the Secretary had to complete designation of national interest lands, 43 U.S.C. § 1616(d)(2), a factor which affects future Native selection rights. It is also the final date for villages to elect certain property rights. 43 U.S.C. § 1618(b).

---

6. The related claim that the other regional corporations must be joined under the rule is frivolous.