**EASTERN BAND OF CHEROKEE INDIANS, Plaintiff,**

v.

**Gladys GRIFFIN, Muriel Maney, James T. Beck, Wilson Rattler, Nell Rattler, Oliver Smith, Richard Byrd, Ross Arch, Quentin Beck, John Henry Queen, Henry Gremo, Larry Lambert, Freida Farris, Ronald Arch, Cabe Lambert, Sara Beck and Melton Smith, Defendants.**

**B–C–80–204.**

United States District Court,
W. D. North Carolina,
Bryson City Division.

Sept. 29, 1980.

Ben Oshel Bridgers, Holt, Haire & Bridgers, Sylva, N. C., for plaintiff.

Herbert L. Hyde and G. Edison Hill, Asheville, N. C., for Gladys Griffin, Sara Beck, James T. Beck and Muriel Maney.

WOODROW WILSON JONES, Chief Judge.

This civil action was filed by the Plaintiff, Eastern Band of Cherokee Indians, seeking injunctive relief enjoining the Defendants from remaining in possession of the lands included in a right of way or easement granted to the North Carolina Department of Transportation by the Plaintiff and the trustee, the United States for the construction of a highway upon the Reservation. The Plaintiff contends that the Defendants' failure to vacate the lands covered by the easement or right of way is impeding the construction of the highway which is already under construction and partially finished and that the Defendants' unauthorized interference has a direct and immediate negative impact on the governmental activities of the Eastern Band as well as the welfare of other tribal members on the Reservation.

The Defendants have answered denying the validity of the easement or right of way granted by the Plaintiff and the United States and contend that the effect of the easement and right of way constitutes a taking of their property without due process of law. They move to dismiss the action for lack of subject matter jurisdiction and for failure to join necessary parties, to-wit: the North Carolina Department of Transportation, the United States and the Secretary of the Interior.

The Plaintiff has moved for summary judgment on the grounds that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

The Plaintiff's motion for summary judgment and the Defendants' motions to dismiss were heard in Bryson City on September 15, 1980 and after consideration of the motions, the pleadings, documents, briefs and arguments of counsel, the Court now enters its findings and conclusions.

It is not in dispute that the Plaintiff, Eastern Band of Cherokee Indians, is a federally recognized tribe of Indians exercising powers of self-government and is the beneficial owner of a tract of land containing about 56,000 acres in Jackson, Swain and other counties in North Carolina known as the Cherokee Indian Reservation. That legal title to said lands was conveyed to the United States in trust for the Band in 1925 in accordance with the Act of June 4, 1924, 43 Stat. 375. It is admitted that the Defendants, Gladys Griffin, Muriel Maney, James T. Beck, Richard Byrd, Ross Arch, Quentin Beck, Wilson Rattler, Nell Rattler, and Oliver Smith are enrolled members of the Eastern Band of Cherokee Indians who reside on the Reservation, and that each of them has been assigned possessory holdings by the Tribal Council to individual parcels of land within the Reservation upon which they reside and that the easement or right of way in question includes the area where they reside. That the Defendants, Sara Beck, James T. Beck, Melton Smith, Cabe Lambert and Oliver Smith are enrolled members of the Band who have outbuildings located on their possessory holdings within the easement or right of way which have not been removed. That the Defendants, Freida Farris, Ronald Arch and Cabe Lambert are enrolled members of the Band who have been assigned possessory holdings and that they have leased a part of such holdings to the Defendants, John Henry Queen, Henry Gremo and Larry Lambert, who are not members of the Tribe, and who have mobile homes located upon such holdings within the road easement or right of way.

The documents which are a part of this record and not in dispute reveal that in 1971 when the North Carolina Department of Transportation, with the help of substantial federal funds, constructed a four lane highway designated as an Appalachian Corridor through the mountains of Western North Carolina it was necessary to cross the southern tip of the Cherokee Reservation. In exchange for financial compensation to the possessory holders affected and to the Tribe the Council agreed to provide a right of way across the Reservation. The Council also required an agreement that the State would improve U.S. Highway 441 from the "Gateway" at the four lane Appalachian Corridor to Cherokee within five years. The Tribal Council has now called upon the State to fulfill its promise and the State is attempting to do so. In the agreement the Tribal Council was to obtain the right of way but the State is to provide the funds with which to compensate the possessory holders for their losses. The State has let a contract and construction is about complete on 4.6 miles of the project (outside the Reservation) from the "Gateway" at the Appalachian Corridor to the Southern Boundary of the Reservation. The project in question here involves the section of highway from the southern boundary line of the Reservation to the Town of Cherokee. Just before the highway reaches the Town of Cherokee it branches out with one branch connecting with U.S. Highway 19 east of the town and the other branch connecting said highway west of the town. This plan will constitute a by-pass of the business section of the town. The east branch or connector is 4,000 feet long and the west connector is 7,000 feet long. The Defendants are possessory holders of land through which this highway is to be built.

On May 22, 1979 the United States of America, as Trustee, acting by and through the Secretary of the Interior and the Tribal Council executed a deed of easement conveying to the North Carolina Department of Transportation an easement or right of way for highway purposes over a portion of the real estate known as the Qualla Indian

Boundary, which is the Reservation, for the construction of the highway in question. Such easement crosses the possessory holdings of some of the Defendants. The right of way agreement required the State to pay to the Tribal Council an agreed amount to be used to compensate the possessory holders, and the Tribal Council is required to disperse the funds to the possessory holders and to have the right of way area vacated on or before October 1, 1979.

The State of North Carolina has already paid to the Tribal Council the sum of $947,-342.00 to be used to compensate the possessory holders for the property taken, and to pay the moving expenses of those who must relocate. This sum was agreed upon by the State, the Tribal Council and the Bureau of Indian Affairs after appraisals were made of each individual possessory holding by Transportation Department officials and officials of the Indian Bureau. Plans have been made by the Council to allot additional possessory holdings to those whose entire holding is taken, and housing is being made available by the Housing Authority on the Reservation to those whose homes are being taken. (See Memorandum of Decision in case of *Walkingstick et al. v. Andrus, et al.,* 626 F.2d 864, 1980. Affirmed July 3, 1980 by the Court of Appeals for the Fourth Circuit, No. 80–1191.)

There is no dispute of any material fact and the case is therefore ripe for summary judgment and the Court will determine all motions filed by both the Plaintiff and the Defendants.

■ There can be no doubt that the Eastern Band of Cherokee Indians is an Indian Tribe within the meaning of the Constitution and laws of the United States. Congress by the Act of July 27, 1868, 15 Stat. 228, recognized the North Carolina or Eastern Cherokee as an Indian Tribe and directed the Secretary of the Interior and the Commissioner of Indian Affairs to take the same supervisory charge of them as of other tribes of Indians. *United States v. Wright,* 53 F.2d 300, 301–303 (4th Cir. 1931). *Haile v. Saunooke,* 246 F.2d 293 (4th Cir. 1957). *Crowe v. Eastern Band,* 506 F.2d 1231 (4th Cir. 1974).

It therefore appears that this Court has jurisdiction of this matter under 28 U.S.C.A. Section 1331 and 28 U.S.C.A. Section 1362. The Plaintiff is a federally recognized Indian Tribe and the complaint shows on its face that a substantial controversy exists over the interpretation and effect of a federal statute. The construction of 25 U.S.C.A. Section 311 presents a "federal question" and provides a basis for federal jurisdiction under Section 1331. *Mescalero Apache Tribe v. Burgett Floral Co.,* 503 F.2d 336 (10th Cir. 1974).

This case presents a controversy falling squarely within the situation contemplated by Congress in enacting 28 U.S.C.A. Section 1362. This section was designed to give Indian Tribes access to Federal Courts in matters arising under the laws of the United States when the United States has failed or declined to act in behalf of the tribe. In these instances tribes are entitled to sue in the place of the United States where the tribe can show a federal question. *Oneida Indian Nation of N. Y. v. County of Oneida, N. Y.,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

The Defendants' motion to dismiss for lack of jurisdiction is without merit and will be denied.

The Defendants also move to dismiss for failure to join necessary parties. Rule 19, Federal Rules of Civil Procedure requires a party to be joined if complete relief cannot be afforded without his presence, and permits joinder of a party if his interest in the action is such that disposition in his absence would impair his ability to protect his own interest or would leave any party with multiple or inconsistent obligations. Neither of these conditions are present in this case.

■ The Department of Transportation would apparently be a proper party but not an indispensible party and therefore should not be joined. The Department has paid to the Tribe $947,342.00 and is the grantee in the deed of easement. The Eastern Band is required under the terms of the agreement to remove the occupants from the right of

way. The Department has complied with the agreement so far and if the Tribe fails to obtain possession of the right of way the Department is not required to build the road. The deed of easement conveys only an easement for a road to the Department, the Tribe and the United States retain ownership of the lands. The easement interest of the Department does not vest until the conditions of the deed are met. One condition is that improvements be vacated or removed and possession of the right of way obtained.

In dealing with Indian Tribes the Secretary of the Interior is the agent of the United States. See 25 U.S.C.A. § 2; and *Armstrong v. United States*, 306 F.2d 520 (10th Cir. 1962). The United States, acting through the Secretary of the Interior, is the trustee for the lands and affairs of the Plaintiff, Eastern Band. See Act of June 4, 1924, 43 Stat. 376. The Secretary has joined in the conveyance of the easement and under the law there is no requirement for his joinder in this action. This case represents nothing more than a dispute between trust beneficiaries, and the Secretary and the United States are not necessary parties to this action. *Central Council of Tlingit and Haida Indians v. Chugach Native Association*, 502 F.2d 1323 (9th Cir. 1974), *cert. den.*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102.

The Defendants seek either a dismissal of the action or *de novo* proceedings to establish the fair market value of the right of way across their possessory holdings. But the State Department of Transportation is under legal duty to deal only with the legal owner of the land, the Tribe and the United States, and to follow the federal statutory and regulatory procedures for obtaining a right of way to build a road on the Reservation. The Department followed this procedure and this dispute is between the Tribe and its members. Neither the Department nor the Secretary have any interest in the competing claims between the original parties to this suit and joinder of either would not affect the rights of any party nor the eventual outcome of the litigation. Neither the Department nor the Secretary are necessary for this Court to grant the relief sought by the Plaintiff. Nor would the addition of these parties afford the Defendants any relief or rights with respect to the defenses raised. These Defendants have no constitutional or statutory right to a jury trial for damages in this Court.

The Defendants' motion to dismiss for failure to join necessary parties, or in the alternative to join the State Department of Transportation, the United States and the Secretary of the Interior are without merit and will be denied.

The Defendants "deny that a valid right-of-way on lands possessed and occupied by the defendants has been granted to the State of North Carolina by the plaintiff and the United States."

The Defendants offer nothing to support this contention other than the statement by two of the Defendants and the answer of four of the Defendants to the effect that they did not consent to the granting of any right of way to the State for highway purposes across their possessory holdings.

The file shows and Defendants' attorney does not dispute the fact that Defendant, James T. Beck signed a release on June 19, 1979 and accepted from the Tribal Council the sum of $29,425.00 as full payment of the taking of his possessory holding and agreed to vacate the property within 90 days from that date. The file also contains a photographic copy of a cancelled check showing payment and receipt of the $29,425.00 by Mr. Beck. In the event Mr. Beck is required to relocate the release agreement provides that he is to be paid any relocation expense which he might incur.

There is no dispute that the other Defendants did not consent to the granting of the right of way across their possessory holdings. The answer of the Defendants raises the legal question as to whether such lack of consent invalidates the easement or right of way.

The Plaintiff contends that this question has already been raised by some of the Defendants and determined adversely to

them by this Court. In *Walkingstick v. Andrus*, 626 F.2d 864 (4 Cir. 1979) the Plaintiffs alleged that neither the Department of Transportation nor the Secretary of the Interior "complied with the federal regulations specifically prescribing the procedures for acquiring and granting rights-of-way over Indian lands." Their complaint specifically referred to "procedures set out in 25 C.F.R. 161 *et seq.*" and asked this Court to "determine" that the right-of-way had violated "applicable statutes and regulations" and sought to enjoin the Secretary of the Interior from removing any Indians from their "houses or lands" and to enjoin the State from any work on the highway project. They asked the Court to declare the right of way signed by the Tribal Council and the Secretary "null and void." The Tribal Council was not a party to the Walkingstick action.

The Court granted a preliminary injunction enjoining the removal of the plaintiffs or invading the right of way until the trial, after which the Court dismissed the action on the merits. While the real thrust of the action in Walkingstick was directed toward environmental issues the Court nevertheless did determine that the requirements of 25 C.F.R. § 161.5 were met and that the claim of invalidity advanced by the plaintiffs was without merit. The Court of Appeals for the Fourth Circuit affirmed "for reasons adequately stated by the district court."

The Court must consider and determine the basic issue involved in this action, that is, is the easement or right of way granted by the Tribal Council and the Secretary valid and is the Plaintiff entitled to the immediate possession of the areas covered by the easement so that the road can be built.

25 U.S.C.A. Section 311 provides:

The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation.

Without doubt the Congress has the authority to authorize the Secretary of the Interior to grant permission to the proper State or local authorities for the opening and establishment of public highways across the Cherokee Indian Reservation. The North Carolina Department of Transportation is the proper State authority to construct and maintain the public road system of this State. The Secretary of the Interior has established such requirements as he deemed necessary for the granting of such rights of way. Part 161 of Title 25 of the Code of Federal Regulations provides the procedure for "Rights-of-way over Indian Lands." Section 161.3(a) provides that no right-of-way shall be granted "across any tribal land ... without the prior written consent of the tribe," and Section 161.12 requires that the consideration for rights-of-way over Indian land "shall be not less than the appraised fair market value of the rights granted..."

The Tribal Council of the Eastern Band has expressed support for the four lane highway for ten years and specifically requested the State Department of Transportation to construct it. (See the Council Resolution filed in this cause.) In addition the Tribal Council joined with the Secretary of the Interior in executing the written right of way conveyance to the Department of Transportation.

The Court of Appeals for the Fourth Circuit held in *United States v. Colvard*, 89 F.2d 312 (4th Cir. 1937) that: "If a roadway over the Indian lands was desired, application should have been made to the Secretary of the Interior pursuant to provisions of the Act of March 3, 1901, 25 U.S.C. 311."

The Defendants contended at the hearing that they were entitled to a jury trial in state court for the purpose of the assessment of damages because, in effect, their lands were being taken for a public purpose

by the State Department of Transportation. This contention overlooks the specific wording of the statutes enacted by the Congress on this subject. Congress provided for condemnation proceedings under 25 U.S.C.A. Section 357, but limited such proceedings to lands which have been allotted to individual Indians. This section does not apply to the Eastern Band because the lands in question, or any of the lands of the tribe, have never been allotted to individual Indians as that term is defined by Congress and the courts. If these lands had been allotted to the Defendants with full power of alienation, then their consent would be necessary or the State would be required to resort to condemnation as provided under 25 U.S.C.A. Section 357. Since these lands have not been allotted to the Defendants with full power of alienation, then the right of way for highway purposes could only be acquired by the grant of permission by the Secretary of the Interior as provided by 25 U.S.C.A. § 311.

The Congress made no provision in the statute for judicial review or for the assessment of damages by a court and jury. It made no requirement that the Secretary obtain the consent of possessory holders or even of the Tribal Council prior to granting such permission. The Congress did require that the Secretary set up such requirements as he deemed necessary. The Secretary has deemed it necessary that among other things the Tribal Council shall give its consent in writing and that it be determined that the fair market value of the rights granted is obtained. This procedure is in keeping with the overall policy of the Congress toward Indians in this country, that is, that the Guardian would act for and in the best interest of the ward. The consent of the Secretary is not required under 25 U.S.C.A. § 357 for condemnation as the Congress undoubtedly considered that the safeguards of judicial proceedings would be sufficient so that the permission of the Secretary was not required. See *Transok Pipeline Co. v. Darks*, 565 F.2d 1150 (10th Cir. 1977).

The Secretary apparently followed his own regulations and requirements before the granting of the right of way to the State. He obtained the consent of the Tribal Council in writing, in fact, the Council joined in the conveyance of the easement and have assumed an active role in obtaining adequate compensation for the possessory holders. The Transportation Department of the State had the lands appraised and the damages assessed but the Secretary had his own appraisals made resulting in some $45,000.00 in additional compensation being paid by the State for such rights of way. The Tribal Council approved the Secretary's appraisal and has received the total sum of $947,342.00 for distribution to the holders of the possessory rights in accordance with the appraisals made by the Secretary.

■ The procedure set forth by the Congress under Section 311 and the requirements of the Secretary adopted in accordance with the section have been followed and the right of way conveyance is valid without the consent of the individual possessory holders.

Due process would require the Secretary to follow the law and to see that the property of the individual possessory holders was not taken for a public highway without just compensation. The attorney for the Defendants could cite no statute or decision which would authorize this Court to substitute its judgment as to value for that of the Secretary. The Congress made no provision for a judicial review of the Secretary's determination of fair value of the property conveyed by the right of way. The Secretary and the Tribal Council have gone to great lengths to carry out their duties in such a way as to insure just compensation to the holders. They have arranged for the payment of all property included in the right of way, damage to remaining lands, buildings taken and moving expenses of those required to be moved. The Council has arranged to grant additional possessory rights to those whose entire possessory holdings have been taken, and to make housing available to those who might need it. The file contains the appraisals and the

methods used to arrive at the total figure. The file also contains a list of all the public hearings conducted by the Council in connection with the highway plan, the right of way and to hear any evidence concerning adequate compensation. The Defendants offered no evidence at any of the Council hearings and now contend only that the Court should dismiss this action and that the State be required to proceed by way of condemnation so they can have a jury trial in State court to determine compensation. This contention is made in face of the fact that the State cannot proceed under Section 357 in this case plus the fact that the State may very well decide that it has complied with its bargain and abandon the improvement of the balance of the highway.

■ The Defendants also contend that they have been denied rights of due process and equal protection of the law guaranteed by the Constitution of North Carolina and the 1968 Indian Civil Rights Act. They argue that they are citizens of the State of North Carolina and have all the rights of other citizens. This Court agrees that they are citizens of the State and has so held on several occasions. However, it must be remembered that we are dealing with possessory rights in Indian lands and the Congress has exercised its constitutional mandate to take charge of this tribe and its land. Thus in so far as this right of way is concerned the federal statutes will prevail over the State Constitution. This does not mean that the Defendants do not have all the rights of other State citizens in lands off the Reservation, but on the Reservation the Congress will control the tribal lands until allotted to the individual Indian without restrictions as to alienation.

■ The Defendants' rights to due process guaranteed under the 1968 Indian Civil Rights Act have not been violated. As heretofore set forth the Secretary complied with the law enacted by the Congress and the requirements established pursuant to the statute. The Secretary and the Tribal Council have made every effort to obtain fair and just compensation for the right of way granted. Due process does not require a judicial determination of fair and just compensation for the rights of way. Without some showing that the Secretary acted unlawfully or arbitrarily this Court could not declare his acts null and void as demanded by the Defendants. No such showing has been made. The Court concludes again that the Secretary acted in accordance with the law.

■ The Court also concludes that the Tribal Council did not deny the Defendants due process of law or otherwise violate their rights. In the event the Court should find some wrongdoing on the part of the Council there is grave doubt as to what authority this Court would have to order redress in light of the Supreme Court's holding in *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), and the Court of Appeals decision in *Crowe v. Eastern Band,* 506 F.2d 1231 (4th Cir. 1974).

Finding that the right of way conveyance is valid and that the Defendants' rights have not been violated as contended in their answer the Court concludes that the Plaintiff is entitled to the relief requested. The Court concludes and will enter an order that the Plaintiff as the duly elected Tribal Council of the Eastern Band of Cherokee Indians had a right to join the Secretary of the Interior in the conveyance of a right of way for the highway in question to be built on the Reservation and that said Council is entitled to the immediate possession of such right of way and that the conduct of the Defendants in refusing to vacate the right of way area is impeding the authority of the Plaintiff in exercising powers of self-government over the tribal lands and that a permanent injunction will be entered enjoining the Defendants from their continued occupancy of the areas in question. The Defendants will vacate the right of way area within 60 days of the Court order.

The Court therefore concludes that the Defendants' motions to dismiss should be denied and that the Plaintiff's motion for a permanent injunction should be allowed. An order will be entered simultaneously herewith.