Vivian **SAMPSON**, Plaintiff,

v.

Cecil **ANDRUS** et al., Defendants.

Civ. No. 78–3017.

United States District Court,
D. South Dakota, C. D.

Jan. 24, 1980.

 

tenant in the allotment, plaintiff's sister, joins in the application. Plaintiff argues that under the relevant statutes, a co-tenant's approval is unnecessary. Both parties made Motions for Summary Judgment on stipulated facts, and after considering the stipulation, briefs and arguments of the parties, the Court grants plaintiff's Motion, and directs that plaintiff submit a proposed Order in Mandamus ordering defendant to consider plaintiff's partition application regardless of whether the other co-tenant joins in the application.

## FACTUAL BACKGROUND

Plaintiff and her sister, both enrolled members of the Cheyenne River Sioux Tribe, each own an undivided one-half interest in a 160 acre inherited trust allotment on the Cheyenne River Indian Reservation. The allotment is apparently some distance from any city, and utilities are not available to serve it.

Plaintiff, according to her affidavit, desires to partition the land so she can exchange her interest for Tribal land near Eagle Butte, South Dakota, where she can build a house. Her application for partition was rejected by the Bureau of Indian Affairs on the ground that it was necessary for the other co-tenant, plaintiff's sister, to join in the application. Plaintiff's sister has so far refused to do so. Plaintiff alleges that her sister's refusal to agree is not because of any particular opposition to the partition, but is due to an unrelated family feud.

## ISSUES

1. Whether the 1934 Indian Reorganization Act, which Plaintiff's Tribe has accepted and by which the Tribe is bound, has supplanted 25 U.S.C. § 378, which section plaintiff urges as the governing statute for her application to partition her trust allotment?

2. Whether Congress intended, in enacting 25 U.S.C. § 483 in 1948, to require the application of all Indian owners of an allotment before the allotment could be partitioned?

Krista Clark, South Dakota Legal Services, Eagle Butte, S. D., Anita Remerowski, South Dakota Legal Services, Mission, S. D., for plaintiff.

R. P. Murley, Asst. U. S. Atty., Sioux Falls, S. D., for defendants.

## MEMORANDUM OPINION

### CASE SUMMARY

DONALD J. PORTER, District Judge.

Plaintiff seeks by this action to obtain declaratory and mandatory relief from the Department of the Interior's refusal to consider plaintiff's application for the partition of her trust allotment on the Cheyenne River Indian Reservation in South Dakota. Defendant contends that it cannot consider plaintiff's application unless the other co-

3. If plaintiff is entitled to relief from an improper refusal to consider her partition application, what remedy is appropriate?

## I.

■ Plaintiff argues first that 25 U.S.C. § 378 governs the disposition of this case. That statute, enacted in 1916, provides that if the Secretary of the Interior finds that any inherited trust allotment can be partitioned to the advantage of the heirs, he may do so, and issue patents in fee for the lands of competent heirs, and trust patents for the lands of incompetent heirs. This, of course, contains no requirement that all, or even one, of the Indian owners apply for partition. On the other hand, defendant takes the position that the 1934 Indian Reorganization Act (25 U.S.C. § 461 et seq.), [hereinafter I.R.A.], which was adopted by the Cheyenne River Sioux Tribe, renders § 378 inapplicable. This Court finds that it must agree with defendant's contention.

Plaintiff claims that Congress did not intend to repeal § 378 when it passed the I.R.A., and that § 378 is compatible with the provisions of the I.R.A. This ignores the history leading up to the enactment of the I.R.A. Section 378 is one of a number of statutes enacted in the early portion of the twentieth century giving the Secretary unilateral power to either issue patents in fee to the Indian owners or to sell individual trust allotments to others.[1] In carrying out this "deliberate policy of hastening the 'emancipation' of the Indian, many patents were issued without Indian application and even over Indian protest." Cohen, Handbook of Federal Indian Law, 109 (U.N.M. Ed.1971). This contributed significantly to a rapid dissipation of Indian trust land, Cohen, 216, which the I.R.A., among its other goals, sought to halt. Cohen, 217. This can be clearly seen in I.R.A. § 4, 25 U.S.C. § 464, which expressly provides that "no sale, devise, gift, exchange, or other transfer of restricted Indian lands . . . shall be made or approved . . .," and in effect, freezes all disposition of trust land except to a Tribe. The incompatibility of the 1934 I.R.A. with the 1916 § 378 thus becomes clear. By unilaterally determining, as the Secretary could under § 378, that a trust allotment is ripe for partition, and issuing patents in fee to the competent tenants, the Secretary removes the protection the land once enjoyed, and leaves it free to escape from Indian ownership, whether by sale or other means, such as in execution of debts or taxes incurred after the issuance of the patent. That this could occur even *against* the wishes of all the owners of an Indian allotment flies in the face of the I.R.A.'s purpose to preserve the Indian land base. So far as Indians belonging to Tribes which have accepted the I.R.A. (as here) are concerned, then, the I.R.A. must be considered to have supplanted § 378.

## II.

■ The Court concludes that the governing statute for this case is 25 U.S.C. § 483, which was passed in 1948 when, apparently, the restrictions on land transfer imposed by the I.R.A. were seen to be too rigid.[2] Section 483 provides that the Secre-

---

1. *See also* 25 U.S.C. § 349 (Act of May 8, 1906): "the Secretary . . . may, in his discretion . . . whenever he shall be satisfied that any Indian allottee is competent . . . at any time to cause to be issued to such allottee a patent in fee simple . . ."; 25 U.S.C. § 372 (Act of June 25, 1910): "If the Secretary . . . decides the heir or heirs of [a] decedent competent . . . he shall issue to heir or heirs a patent in fee . . . if he shall decide one or more of the heirs to be incompetent, he may, in his discretion, cause such lands to be sold . . ."; 25 U.S.C. § 373 (Act of June 25, 1910): "the Secretary . . . may, in his discretion, cause the [trust allotment] to be sold and the money derived therefrom . . .

used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued . . . ."

2. *See* the report of the Department of the Interior which was made part of H.R.Rep.No.1688, 80th Cong.2d Sess. (1948) recommending enactment of § 483, stating that "there is no authority under existing law for the sale to non-Indians of any lands held under [the I.R.A.]." 1948 U.S. Congressional Code Service, pp. 1541, 1543.

*See also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. McKay*, 95 U.S.App. D.C. 331, 221 F.2d 886 (D.C.Cir.1955).

tary of the Interior "is authorized in his discretion, and upon application of the Indian owners, to issue patents in fee, to remove restrictions against alienation, and to approve conveyances . . . ." Although there appear to have been some inconsistent interpretations of § 483 by the Department of the Interior, as shown by an internal Department of the Interior Memorandum of February 16, 1979, to the Assistant Secretary for Indian Affairs, from the Acting Associate Solicitor of Indian Affairs,[3] at present the words "upon application of the Indian owners" are taken to mean "upon the application of *all* the Indian owners."

 The only reason given in any of the Department of the Interior memoranda for this interpretation is the belief that the "use of the plural form of owner clearly manifests an intent that the consent of all beneficial owners be obtained". It must be noted, however, that the mere use of a plural word does not lead inevitably to the conclusion that the word must only be interpreted in a plural sense: "In determining the meaning of any Act . . . of Congress . . . words importing the plural number may include the singular . . . ." 1 U.S.C. § 1. The United States Supreme Court has declared that "this rule is not one to be applied except where it is necessary to carry out the evident intent of the statute," *First National Bank v. Missouri*, 263 U.S. 640, 657, 44 S.Ct. 213, 215, 68 L.Ed. 486 (1924), as determined by the context or the subject matter of the

statute. The "evident intent" of the 1948 § 483 is clearly to remove the stringent restrictions on land transfer imposed by the 1934 § 464. By adding the requirement of an application, § 483 avoids reinstating the unilateral powers of the Secretary over the land under statutes such as the 1916 § 378. Section 483 indicates that Congress meant that the owners of allotments should, in suitable cases, be allowed to free their land from federal controls, but to do this on the *Indian's* initiative, not the Secretary's. By going a step further and adding the requirement that *all* Indian owners have to join in the application under § 483, the Department of the Interior creates what must be in many cases, as in this one, an almost insurmountable obstacle. It is common for allotments to have numerous owners, *see* Cohen, 216, and by requiring that each of these be located and his consent obtained, the Department's construction of § 483 effectively prevents partition in many instances where it would be proper within the Secretary's trust responsibility and also beneficial to the owners. Given the duty the federal government has assumed toward Indians, both in its federal trust responsibility and under statutes such as 25 U.S.C. § 185,[4] this Court is obliged to hold that the narrow administrative interpretation made of § 483 defeats the "evident intent of the statute", and that applications made by less than all the allotment owners should be given consideration.[5]

---

3. This memorandum indicates that between 1948 and 1958, the Bureau of Indian Affairs in the Department of Interior believed that the 1948 § 483 reinstated pre-I.R.A. procedures for conveyances of trust land. According to the memorandum, B.I.A. personnel took the view that 25 U.S.C. § 372, *see* note 1, *supra*, was once again proper authority for the sale of trust allotments. The memorandum stated that at least 490 trust allotments in the Minneapolis area were conveyed in accordance with that section in the 1948–1958 period. The memorandum recommended review of B.I.A. records of all heirship sales made pursuant to § 483 in all B.I.A. offices in the United States.

4. This statute provides that whenever an Indian has had an allotment made to him, the United States "shall take such measures, not inconsistent with law, as may be necessary to

protect such Indian in the quiet enjoyment of the lands so allotted to him." By making it impossible in some cases for an Indian such as plaintiff here, to partition or otherwise alter the ownership of an allotment so as to get some benefit out of what might otherwise be of little use to its owner, the United States would seem to violate the spirit of this statute.

5. The legislative history of § 483 lends no support to defendant's current interpretation. After reviewing a draft of § 483 in 1948, the Secretary of the Interior, in a letter to the House Committee on Public lands, recommended that "the proposed bill should confer also the specific authority for the issuance of patents and removal of restrictions *upon application of the individual allottee*," 1948 U.S. Congressional Code Service, p. 1543 (Emphasis

## III.

The remaining question before this Court is what relief should be given. Plaintiff requested declaratory as well as mandatory relief, but the Court finds that an order in mandamus is sufficient.

█ Given the discretionary terminology in § 483, an order in mandamus would not ordinarily be an appropriate remedy here. Certainly, had the Secretary considered plaintiff's application and denied it on the merits, mandamus would not be proper. However, the Secretary does not appear to have ever exercised his discretion either to accept or reject the application, but has instead refused to even consider the application on the grounds that the co-tenant, (plaintiff's sister) had not joined in it. Under these circumstances, mandamus will lie "to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way . . . ." *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930); *Rural Electrification Administration v. Northern States Power Co.*, 373 F.2d 686, 694 n.14 (8th Cir. 1967).

In view of this Court's construction of § 483, the Secretary has acted in excess of his authority by refusing to consider plaintiff's application. This is not to say that the Secretary must approve it, but he must give it the same consideration he has previously given similar applications with all Indian owners joined. This Court cannot, of course, control the Secretary's discretion, and it may be that the refusal of plaintiff's sister to join in the application could be a factor in the Secretary's determination of whether a partition would be beneficial. The Secretary may not, however, refuse to exercise his discretion on the sole grounds that a co-tenant in an allotment did not sign the application.

## IV.

A few words in closing might be said in regard to defendant's Cross Motion for Summary Judgment. Jurisdiction in this case seems quite clearly conferred by 28 U.S.C. § 1331 and § 1361 and 5 U.S.C. § 702,[6] thus overcoming defendant's jurisdictional objections. Also, defendant's claim that this action must be dismissed for failure to include indispensable parties (the co-tenant and the Cheyenne River Sioux Tribe) fails because, as plaintiff points out, this action does not seek to actually partition the allotment, but only attacks defendant's interpretation of § 483 and consequent refusal to consider plaintiff's application. Defendant's other contentions have been put to rest by the outcome of this Court's decision.

Plaintiff is therefore directed to prepare a proposed Order in Mandamus in accordance with this Memorandum, and to submit it to this Court and opposing counsel within ten days from the date of this Memorandum.

█

---

supplied), and suggested that the statute use the language with which it was, in fact, enacted.

**6.** See *Hill v. United States*, 571 F.2d 1098, 1102 (9th Cir. 1978); *People of the State of Ill. ex rel. Scott v. Hoffman*, 425 F.Supp. 71, 75 (S.D.Ill. 1977).