NEBRASKA PUBLIC POWER DISTRICT, a public corporation and political subdivision of the State of Nebraska, Plaintiff,

v.

100.95 ACRES OF LAND IN COUNTY OF THURSTON, Hiram Grant, et al., Unknown Owners, United States of America, and Department of the Interior, Defendants.

Civ. No. 79–0–411.

United States District Court, D. Nebraska.

June 4, 1982.

---

James DeMars, Lincoln, Neb., for plaintiff.

Michael D. Gooch, Inter-Tribal Legal Services, Winnebago, Neb., Yvonne T. Knight, Native America Rights Fund, Boulder, Colo., Paul W. Madgett, Asst. U. S. Atty., Omaha, Neb., for defendants.

## MEMORANDUM OPINION

SCHATZ, District Judge.

### STATEMENT OF THE CASE

This civil action arose as a result of efforts by the plaintiff, Nebraska Public Power District (hereinafter N.P.P.D.), to construct a high-voltage electric transmission line over a portion of the Winnebago Indian Reservation (hereinafter Reservation) in Thurston County, Nebraska. Pursuant to 25 U.S.C.A. § 357, N.P.P.D. asserts that the states have been granted the right to condemn Indian trust lands (hereinafter trust lands) under certain circumstances. N.P.P.D. seeks to obtain via condemnation proceedings a perpetual easement or right-of-way across twenty-nine tracts of land located within the exterior boundaries of the Reservation for the purpose of constructing, operating and maintaining the electric transmission line referred to above. The Winnebago Tribe of Nebraska (hereinafter Tribe), several individual Indian defendants and the United States all challenge and dispute the legal authority of N.P.P.D. to condemn the lands at issue in this litigation.

On November 3, 1980, a final pretrial conference was held before the United States Magistrate. In the resulting pretrial order, the parties agreed inter alia to accept as established for purposes of this case certain uncontroverted facts, and specified the unresolved legal issues which remain to be determined by the Court. Trial to the Court was held on December 1, 1981, at which evidence offered by plaintiff and defendants was received, and the matter was submitted upon the record. Also on the day of trial, the parties entered into and filed a stipulation primarily addressing the historical progression of land ownership by the Tribe. After careful consideration of the pleadings, exhibits, briefs, documents and arguments of counsel, the Court now enters this memorandum as its findings of fact and conclusions of law.

### FACTUAL BACKGROUND

1) N.P.P.D., a public corporation and political subdivision of the State of Nebraska, is engaged in the generation, transmission and distribution of electric energy. N.P.P.D. is organized under the provisions of Chapter 70, Article 6, Reissue Revised Statutes of Nebraska 1943, and is authorized to exercise the power of eminent domain under Nebraska law.

2) N.P.P.D. obtained permission from the Nebraska Public Service Commission and the Nebraska Power Review Board to construct the proposed high voltage transmission line. Additionally, N.P.P.D. obtained through Iowa Public Service Company certain permits necessitated by the proposed interconnection between the substations of the respective utilities.

3) The Winnebago Tribe of Nebraska, a federally recognized tribe of Indians exercising powers of self-government, was organized under the Indian Reorganization Act of 1934 (hereinafter I.R.A.), 48 Stat. 984, 25 U.S.C.A. §§ 461 et seq. On February 29, 1936, the Tribe duly ratified its constitution, and the Secretary of the Interior approved the tribal constitution on April 3, 1936. The Tribe occupies a reservation located in approximately the northern half of Thurston County, Nebraska. This Reservation has not been disestablished by any Act of Congress or presidential proclamation. The Tribe is governed by an elected tribal council.

4) Since 1936 the Tribe, with varying degrees of success, has attempted to repurchase those portions of the reservation owned by non-Indians, and has sought to consolidate within its reservation the heirship interests held by the descendants of original Indian allottees.

5) The United States is an indispensable party in an action where condemnation is exercised against allotted trust land (hereinafter allotted land). The Department of the Interior, as trustee for the allotted land, is joined as a defendant. The Tribe has an interest in certain of the tracts of land sought to be condemned and is, therefore, named as a defendant herein. The remaining defendants are individual members of the Tribe who hold interests in the parcels of allotted land under condemnation in this action.

6) The tracts sought to be condemned by N.P.P.D. were originally tribal lands which were allotted by the United States to individual Indians prior to March 3, 1901, pursuant to the General Allotment Act, 24 Stat. 388, 25 U.S.C.A. § 348, or the treaty of March 8, 1865, between the United States and the Tribe, 14 Stat. 671. Legal title to these lands is held by the United States in trust for the heirs of the original Indian allottees and the Tribe.

7) Prior to commencement of the instant condemnation action, several individual Indians deeded to the United States in trust for the Tribe undivided interests of varying quanta in lands along the route of the proposed transmission line, while reserving life estates in those lands. The Department of the Interior, Bureau of Indian Affairs, complied with its regulations in processing, recording and approving these deeds. As a result of such conveyances by individual Indians, the Tribe claims to own interests in approximately fifteen of the twenty-nine tracts sought to be condemned by N.P.P.D. The individual Indian defendants herein number several hundred and hold undivided equitable interests in the twenty-nine parcels sought to be condemned.

8) The electric transmission line proposed by N.P.P.D. would be constructed across and over specific tracts of land in each of which one or more defendants hold an interest. Said power line would be a single circuit, 345,000 volt transmission line connecting an N.P.P.D. substation near Hoskins, Nebraska, to an Iowa Public Service company substation near Raun, Iowa.

9) The Tribal Council, acting pursuant to the I.R.A. and the tribal constitution, has passed one or more resolutions opposing construction of the proposed power line and opposing the condemnation of tribal trust land (hereinafter tribal land). Neither the answering individual defendants nor the Secretary of the Interior has consented to the granting of easements over, or the condemnation of, the tracts of land in question.

10) Although N.P.P.D. communicated with the Bureau of Indian Affairs regarding the matter of obtaining easements over the parcels of land now sought to be condemned, N.P.P.D. did not conduct any negotiations with the individual Indian allottees.

## ISSUES

The unresolved questions of law remaining to be determined by the Court were broadly framed by the parties in the pretrial order as follows:

1) Whether N.P.P.D. has the legal authority to condemn the tracts of land in which the answering individual defendants hold an interest.

2) Whether N.P.P.D. has the legal authority to condemn the tracts of land in which the Tribe holds an interest.

## STATUTES

Title 25, United States Code Annotated, Section 323, provides in part:

The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, subject to such conditions as he may prescribe, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes, communities, bands or nations, or any lands now or hereafter owned, subject to restrictions against alienation, by individual Indians or Indian

tribes, communities, bands or nations, . . . .

Title 25, United States Code Annotated, Section 324, in pertinent part provides:

No grant of a right-of-way over and across any lands belonging to a tribe organized under sections 461–473 and 474–479, of this title . . . shall be made without the consent of the proper tribal officials. Rights-of-way over and across lands of individual Indians may be granted without the consent of the individual Indian owners if . . . (4) the owners of interests in the land are so numerous that the Secretary finds it would be impracticable to obtain their consent, and also finds that the grant will cause no substantial injury to the land or any owner thereof.

Title 25, United States Code Annotated, Section 357 states in full as follows:

Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee.

Title 25, United States Code Annotated, Section 465, provides in part:

The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trusts or otherwise restricted allotments, . . . for the purpose of providing land for Indians.

Title 25, United States Code Annotated, Section 476, in part states:

.    .    .    .    .

In addition to all powers vested in any Indian tribe or tribal council by existing law, the constitution adopted by said tribe shall also vest in such tribe or its tribal council the following rights and powers: . . . to prevent the sale, disposition, lease or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe; and to negotiate with the Federal, State and local Governments.[1]

## DISCUSSION

The overriding question to be resolved by the Court in this action is whether 25 U.S.C.A. § 357, in light of the more recent Indian Right-of-Way Act of 1948, 25 U.S.C.A. §§ 323–328, and evolving federal Indian policy, authorizes the acquisition through judicial condemnation proceedings of an easement[2] over and across trust lands for the construction of an electric transmission line.

■■■ Many of the legal principles applicable to a proper determination of the above question are not new. Although Congress may, of course, provide for the condemnation of Indian lands, *United States v. 10.69 Acres of Land, etc.*, 425 F.2d 317, 320 (9th Cir. 1970), it is a long-standing principle of American jurisprudence that Indians and Indian tribes should not be deprived of rights in their land without their consent. *See, e.g., The New York Indians*, 72 U.S. (5 Wall.) 761, 771, 18 L.Ed. 708 (1867); *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831); *Plains Electric Generation and Transmission Cooperative, Inc. v. Pueblo of Laguna*, 542 F.2d 1375, 1376 (10th Cir. 1976); 48 Stat. 987, 25 U.S.C.A. § 476; *Northwest Ordinance of 1789*, Art. III, 1 Stat. 50, 52. The "policy of

---

1. In conformity with the mandate of Section 476, Article IV of the Constitution of the Winnebago Tribe of the Winnebago Reservation provides in pertinent part:

Section I. Enumerated Powers—The tribal council shall exercise the following powers,

.    .    .    .    .

To protect and preserve the property, wildlife, and natural resources of the tribe.
Article VIII of said Constitution in part states:

The tribal council shall have the following authorities:
Sec. I . . . To prevent the sale, disposition, lease, or encumbrance of tribal lands, interest in lands, or other tribal assets.

2. The terms easement and right-of-way will be used interchangeably throughout this memorandum.

leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973), *quoting Rice v. Olson*, 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945). Traditional notions of Indian self-government, that is, "the right of reservation Indians to make their own laws and be ruled by them," *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959), are so firmly engrained in our jurisprudence that they provide an important yardstick against which vague or ambiguous federal enactments must be measured. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980).

▆ For over a century and a half, courts have construed statutes and treaties relating to Indians liberally, as the Indians themselves would naturally understand them, and not to the Indians' prejudice. *Antoine v. Washington*, 420 U.S. 194, 199–200, 95 S.Ct. 944, 948, 43 L.Ed.2d 129 (1975); *Carpenter v. Shaw*, 280 U.S. 363, 367, 50 S.Ct. 121, 122, 74 L.Ed. 478 (1930); *Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 380 (1st Cir. 1975); *Pueblo of Taos v. Andrus*, 475 F.Supp. 359, 366 (D.D.C.1979). This Court must be guided by that "eminently sound and vital canon," *Northern Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 655 n.7, 96 S.Ct. 1793, 1797 n.7, 48 L.Ed.2d 274 (1976), that "statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians." *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 666, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979), *quoting Bryan v. Itasca County*, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976); *Alaska Pacific Fisheries v. United States*, 248 U.S. 78, 89, 39 S.Ct. 40, 41, 63 L.Ed. 138 (1918); *see Antoine v. Washington, supra*, 420 U.S. at 199–200, 95 S.Ct. at 948; *Squire v. Capoeman*, 351 U.S. 1, 6–7, 76 S.Ct. 611, 614–615, 100 L.Ed. 883 (1956); *Smith v. McCullough*, 270 U.S. 456, 464–65, 46 S.Ct.

338, 341, 70 L.Ed. 682 (1926); *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912). Furthermore, it is well known that legislation dealing with Indians and Indian affairs "cannot be interpreted in isolation but must be read in light of the common notions of the day and the assumptions of those who drafted them." *Wilson v. Omaha Indian Tribe, supra*, 442 U.S. at 666, 99 S.Ct. at 2537, *quoting Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 206, 98 S.Ct. 1011, 1019, 55 L.Ed.2d 209 (1978).

By virtue of passage of the I.R.A., 48 Stat. 984, 25 U.S.C.A. §§ 461 *et seq.*, Congress in 1934 made a determination "that proper fulfillment of its trust required turning over to the Indians a greater control of their own destinies." *Morton v. Mancari*, 417 U.S. 535, 553, 94 S.Ct. 2474, 2484, 41 L.Ed.2d 290 (1974). A strong federal policy of encouraging the preservation of Indian communities, *United States v. John*, 437 U.S. 634, 645, 646, 98 S.Ct. 2541, 2547, 57 L.Ed.2d 489 (1978), of promoting tribal independence and self-government, *White Mountain Apache Tribe v. Bracker, supra*, 448 U.S. at 143–44, 100 S.Ct. at 2583–84, and of halting the rapid dissipation of Indian trust land, *Sampson v. Andrus*, 483 F.Supp. 240, 242 (D.S.D.1980), began to emerge. The federal Indian policy embodied in the I.R.A., important elements of which are the preservation of the Indians' land base and the encouragement of tribal self-sufficiency, remains presently viable. *See, e.g., White Mountain Apache Tribe v. Bracker, supra*, 448 U.S. at 143–44, 100 S.Ct. at 2583–84; *Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra*, 542 F.2d at 1379–81; *Sampson v. Andrus, supra*, 483 F.Supp. at 242, 243; *Aguilar v. United States*, 474 F.Supp. 840, 846 (D.Alaska 1979).

I. The Indian Right-of-Way Act of 1948

In initiating the discussion of statutory rights-of-way, it may be noted that, prior to 1948, the Secretary of the Interior (hereinafter Secretary), possessed authority under various special purpose access statutes[3] to

---

**3.** *E.g.,* 31 Stat. 1084, 25 U.S.C.A. § 311; 30 Stat. 990, 25 U.S.C.A. § 312; 31 Stat. 1083, 25

grant different types of easements across Indian lands. In 1948 Congress enacted a comprehensive, general purpose right-of-way statute, 62 Stat. 17, 25 U.S.C.A. §§ 323–328, which empowers the Secretary to grant rights-of-way for all purposes over and across trust lands. *See Fredericks v. Mandel*, 650 F.2d 144, 147 (8th Cir. 1981). Title 25, U.S.C.A. § 324 provides that no right-of-way grant across lands belonging to a tribe organized under the I.R.A. and related laws shall be made without the consent of the proper tribal officials. Grants over lands allotted to individual Indians also require the consent of those individuals, but § 324 does specify four exceptions permitting the Secretary to grant rights-of-way across the land of individual Indians without the allottee's consent. For purposes of this action, the most significant exception is that which relieves the right-of-way applicant from the consent requirement whenever the individual landowners are so numerous that the Secretary finds it would be impractical to obtain their consent, and also determines that the grant will not cause any substantial injury to the land or its owners. Title 25, U.S.C.A. § 325 prohibits the grant of rights-of-way without the payment of just compensation. Title 25, U.S.C.A. § 326 provides that neither the Federal Power Act nor existing statutes authorizing right-of-way grants over Indian lands are to be considered repealed by 25 U.S.C.A. §§ 323–328. Title 25, U.S.C.A. § 327 empowers the Secretary to grant rights-of-way for the use of the United States upon application by the appropriate department or agency. Title 25, U.S.C.A. § 328 authorizes the promulgation of necessary regulations for the purpose of implementing and administering the provisions of 25 U.S.C.A. §§ 323–327.[4]

The Indian Right-of-Way Act of 1948 (hereinafter 1948 Act) was intended to satisfy the need for simplification and uniformity in the administration of easements over the various categories of Indian lands. Frison, *Acquisition of Access Rights and Rights of Way on Fee, Public Domain, and Indian Lands*, 10 Rocky Mtn.Min.L.Inst. 217, 257 (1965). The apparent reason for preserving certain existing legislation was to avoid possible confusion, particularly during the period of transition from the old to the new system. S.Rep.No.823, 80th Cong., 2d Sess., reprinted in [1948] U.S.Code Cong.Serv. 1033, 1036. At this point, it should be noted that 25 U.S.C.A. § 326 does not include 25 U.S.C.A. § 357 in the designation of statutes expressly saved from amendment or repeal, nor do 25 U.S.C.A. §§ 323–328 specifically authorize the condemnation of easements across trust land for the construction of electric transmission lines.

In support of its assertion that 25 U.S.C.A. § 357 authorizes an entity, clothed by a state with the power of eminent domain, to condemn allotted land within reservations for transmission line easements, N.P. P.D. argues, inter alia, that: (1) 25 U.S.C.A. § 357 and other federal statutes (including 25 U.S.C.A. §§ 323–328) which provide for the acquisition of voluntary easements are independent and alternative methods for obtaining rights-of-way across trust lands; (2) there exists no statutory requirement that an attempt to secure voluntary easements must be made prior to the filing of a condemnation action; (3) public necessity and accommodation of the public purpose favor the exercise of condemnation by an entity such as N.P.P.D., if easements covered by other statutory enactments cannot be acquired; and (4) a determination that rights-of-way over trust lands may be granted only by the Secretary with the consent of the proper tribal officials or individual Indian owners would emasculate the language of 25 U.S.C.A. § 357. N.P.P.D.

U.S.C.A. § 319; 35 Stat. 781, 25 U.S.C.A. § 320; 33 Stat. 65, 25 U.S.C.A. § 321; 31 Stat. 790, 43 U.S.C.A. § 959; 36 Stat. 1253, 43 U.S.C.A. § 961.

**4.** Regulations prescribed pursuant to the Indian Right-of-Way Act of 1948 are contained in 25

C.F.R., Part 161. These regulations detail the procedures, terms and conditions under which rights-of-way over tribal land and individually owned land may be obtained. 25 C.F.R. § 161.-2(a) (1981).

stresses the "plain meaning" of § 357, *see United States v. Clarke*, 445 U.S. 253, 254, 100 S.Ct. 1127, 1128, 63 L.Ed.2d 373 (1980), and primarily relies upon *Nicodemus v. Washington Water Power Co.*, 264 F.2d 614 (9th Cir. 1959), and *United States v. Minnesota*, 113 F.2d 770 (8th Cir. 1940), as supportive authority.

These decisions must be examined carefully in evaluating their vitality and applicability to the case at bar. In *United States v. Minnesota, supra*, the Eighth Circuit Court of Appeals ruled that the State of Minnesota, by virtue of 25 U.S.C.A. § 357, possessed the authority to condemn an easement over allotted land for the establishment of a public highway, without having first secured from the Secretary permission pursuant to 25 U.S.C.A. § 311 for the opening of such public highway through the allotted lands in question. 113 F.2d at 773, 774. The Court of Appeals stated that 25 U.S.C.A. § 311 and 25 U.S. C.A. § 357 offered two valid and independent methods of procedure for the acquisition of rights-of-way across allotted lands for public highways. 113 F.2d at 773. *Minnesota*, however, was decided in 1940, a result being that the Court of Appeals in that case had no occasion to consider the impact and legislative history of the 1948 Act. Furthermore, since *Minnesota* involved the acquisition of rights-of-way for a public highway rather than for a power line, certain statutes [5] empowering the Secretary to grant rights-of-way through Indian reservations for, *e.g.*, electrical plants, lines and poles, were not at issue. This Court, therefore, finds *United States v. Minnesota, supra*, to be distinguishable from the situation here presented, and does not view *Minnesota* as controlling authority on the question of whether 25 U.S.C.A. § 357 currently authorizes the condemnation of easements for electric transmission lines across allotted lands.

Unlike *Minnesota, Nicodemus v. Washington Water Power Co., supra*, did involve the acquisition by a public utility corporation of a right-of-way for a power line. In *Nicodemus*, the utility company sought to condemn an easement for the construction and maintenance of an electric transmission line over a portion of a tract of land which had been allotted in severalty to an enrolled member of the Coeur d'Alene Indian Tribe, the title to which land was held in trust for the Indian by the United States. The Ninth Circuit Court of Appeals, in a decision affirming the district court's order decreeing condemnation of the claimed easement, found that land allotted in severalty was neither tribal land nor part of the reservation, and stated:

Congress, under section 357, expressly authorized the condemnation for any public purpose of lands allotted in severalty to Indians. This is the only subject matter of the section. The section is clear, plain, unambiguous, and there is no difficulty in determining the Congressional intent.

264 F.2d at 617.

Relying primarily upon the reasoning of the Eighth Circuit Court of Appeals in *United States v. Minnesota, supra*, the *Nicodemus* court considered and rejected the view that rights-of-way over allotted lands are governed by the 1948 Act to the exclusion of the condemnation remedy found in 25 U.S.C.A. § 357. In that Court's opinion, "Section 323 and Section 357 offer two methods for the acquisition of an easement across allotted Indian land for the construction of an electric transmission line. The United States has consented to both methods." *Nicodemus v. Washington Water Power Co., supra*, 264 F.2d at 618. The Court in *Nicodemus* concluded, therefore, that permission by the Secretary of the Interior was not a prerequisite to the initiation of a condemnation suit under 25 U.S. C.A. § 357. *Id. See also Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1153 (10th Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (25 U.S.C.A.

---

**5.** 31 Stat. 790, 43 U.S.C.A. § 959 (Rights-of-way for electrical plants, etc.); 36 Stat. 1253, 43 U.S.C.A. § 961 (Rights-of-way through public lands, Indian, and other reservations for power and communications facilities).

§ 357 does not impose a requirement of consent by the Secretary); *Bennett County v. United States*, 394 F.2d 8, 15 (8th Cir. 1968) (county's right to enter allotted lands for construction of a public highway was contingent upon securing the Secretary's permission or acquiring the land through condemnation proceedings).

After giving the matter careful consideration, this Court is unable to concur with the result reached in *Nicodemus*. The Court of Appeals there did not focus closely on the impact of passage of the 1948 Act, nor did it indicate recognition of the evolving federal policy which strongly favors preservation of the Indian land base and encouragement of tribal self-government. Without discussing any possible incompatibility between 25 U.S.C.A. §§ 323–328 and 25 U.S.C.A. § 357, the *Nicodemus* court simply concluded that those statutes could operate concurrently and provide two independent means of obtaining rights-of-way over allotted lands. While *Nicodemus* "may have been well-considered on the arguments before the court, the opinion indicates no consideration of the legislative history," *Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra*, 542 F.2d at 1380, and public policy considerations that have been presented to us.[6]

■ Although by its express terms the 1948 Act did not repeal or amend either the special purpose access statutes referred to earlier or the eminent domain statute (25 U.S.C.A. § 357) at issue in this litigation, the Court finds that the 1948 Act was intended to supersede them, 1 American Law of Mining § 2.82 at 457 (1981), and that 25 U.S.C.A. §§ 323–328 may properly be considered to have supplanted 25 U.S.C.A. § 357 insofar as the acquisition of electric transmission line rights-of-way across trust land is concerned. *Cf. Sampson v. Andrus, supra*, 483 F.Supp. at 242 (I.R.A. held to have supplanted 25 U.S.C.A. § 378 in refer-

ence to the partition of trust allotments). *See also Minnesota v. United States*, 305 U.S. 382, 391, 59 S.Ct. 292, 296, 83 L.Ed. 235 (1939), where the Supreme Court expressly left open a similar question, namely, whether lack of consent by the Secretary to the construction of a public highway over Indian lands precluded maintenance of a 25 U.S.C.A. § 357 condemnation proceeding.

The reasoning of the Tenth Circuit Court of Appeals in *Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra*, strongly supports by analogy the position that the 1948 Act, 25 U.S.C.A. §§ 323–328, was intended to occupy completely the field of rights-of-way over and across trust lands to the exclusion of 25 U.S.C.A. § 357. *Plains Electric* was an action brought under the State of New Mexico's power of eminent domain to condemn a right-of-way for electrical transmission lines across two parcels of Pueblo Indian land. Jurisdiction in the district court was based on the Act of May 10, 1926, which permitted condemnation of the Pueblo lands in New Mexico for any public purpose. Following a thoughtful analysis of the legislative histories of the applicable statutes, the Court of Appeals held that the 1926 Act had been repealed by implication by subsequent legislation governing the acquisition of rights-of-way through Pueblo land, and the Court reversed the lower court's judgment in favor of the condemnor. 542 F.2d at 1381. Significantly for purposes of the case at bar, the *Plains Electric* court found a positive repugnancy between the 1926 Act and the 1948 Act, noted that the Pueblo of Laguna is a tribe organized under the I.R.A., and, after setting forth in part 25 U.S.C.A. § 476 (which provides for the protection of tribal lands), stated as follows:

> While rights of way were perhaps not governed by this section [25 U.S.C.A. § 476], the 1948 Act did extend that protection.

.   .   .   .   .

---

6. This Court is cognizant of the following statement which appears within the legislative history of the 1948 Act: "Section 5 [25 U.S.C.A. § 327] of the bill broadens existing powers of condemnation over individually owned Indian lands." S.Rep.No.823, 80th Cong., 2d Sess.,

reprinted in [1948] U.S.Code Cong.Serv. 1033, 1036. The Court is of the opinion, however, that the "individually owned" lands referred to are the equivalent of the patented lands discussed *infra* at II.

If the Act of 1926 remains in effect, the 1948 Act would be ineffective as it applies to the Pueblo Indians. They would be without the protection of the Secretary and would be stripped of the powers conferred upon them by the Indian Reorganization Act of 1934.

542 F.2d at 1380.

In a footnote, the Court of Appeals stressed that "[t]he continued existence of a general condemnation statute is repugnant to the later statutes which do not purport to authorize condemnation." 542 F.2d at 1380 n.5.

As in *Plains Electric*, this Court does not see how, in reference to the grant of easements across allotted lands, 25 U.S.C.A. § 357 can reasonably coexist with the 1948 Act. Viewing the statutes dealing with the acquisition of rights-of-way over allotted and tribal trust lands contained in 25 U.S.C.A. §§ 311–328, "they constitute a comprehensive scheme which completely covers the subject of rights of way." *Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra,* 542 F.2d at 1380. The 1948 Act was intended to meet the need for uniformity in the administration of easements over trust lands. If Congress had intended 25 U.S.C.A. § 357 to continue in effect with reference to rights-of-way, the 1948 Act would have been unnecessary. *See Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra,* 542 F.2d at 1378. The discretionary authority contained in 25 U.S.C.A. §§ 323–328 would add nothing to the general power of condemnation provided by 25 U.S.C.A. § 357. *Id.* This circumstance suggests to the Court that the 1948 Act should be considered a substitute for, rather than a mere alternative to, 25 U.S.C.A. § 357.

Moreover, the 1948 Act, which vests in the Secretary the power to grant and oversee all types of rights-of-way across trust lands, is inconsistent with 25 U.S.C.A. § 357. Several provisions of the 1948 Act would in effect be nullified if easements could be obtained by way of condemnation proceedings. These provisions include: the Secretary's powers to prescribe conditions relating to rights-of-way granted, to determine just compensation, to promulgate implementing regulations; the rights of tribal officials and individual allottees to withhold their consent; and the Secretary's authority to grant certain rights-of-way without the consent of the individual Indian owners in four designated classes of cases.

Were 25 U.S.C.A. § 357 to be allowed to continue in effect as to easements through allotted lands, the power of the Secretary to control such easements would be illusory. *See United States v. 10.69 Acres of Land, supra,* 425 F.2d at 320 (to permit the Secretary of Transportation to use 23 U.S.C.A. § 107(a) to condemn tribal lands for highway purposes whenever he thought it desirable to do so would "negate the protective purposes evident in 25 U.S.C. §§ 323–328"). Whenever the Secretary disapproved of, or the Indians objected to, any proposed right-of-way, a condemnation action under 25 U.S.C.A. § 357 could be brought, thus effectively circumventing such objections. Effect can be given to both 25 U.S.C.A. § 357 and the 1948 Act by limiting applicability of the condemnation remedy of Section 357 to the following categories:

1) The acquisition of interests, including easements, in patented lands for any public purpose, *see* discussion *infra* at II; and

2) The acquisition of interests other than easements, which are controlled by 25 U.S.C.A. §§ 323–328, in allotted lands, *cf. Tuscarora Nation of Indians v. Power Authority,* 257 F.2d 885 (2d Cir. 1958), *appeal dismissed,* 362 U.S. 608 [80 S.Ct. 960, 4 L.Ed.2d 1009] (1960) (state power authority sought to take Tuscarora reservation land for use as a water storage reservoir).

Any uncertainty regarding the proper relationship among the involved statutes must be resolved in a manner which effectuates insofar as is possible the Indian protective purposes of the more recent legislation. *See White Mountain Apache Tribe v. Bracker, supra,* 448 U.S. at 143–44, 100 S.Ct. at 2583–84; *Wilson v. Omaha Indian Tribe, supra,* 442 U.S. at 665–66, 99 S.Ct. at 2536–37; *Smith v. McCullough, supra,* 270

U.S. at 464–65, 46 S.Ct. at 341; *Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra,* 542 F.2d at 1381.

■ The power given by 25 U.S.C.A. §§ 323–328 to the Secretary to control and manage easements across trust lands would be totally frustrated if 25 U.S.C.A. § 357, which permits condemnation suits for any public purpose without the consent of the Secretary or the Indians, is found to remain applicable to the acquisition of rights-of-way over trust allotments. *See Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra,* 542 F.2d at 1381. At least hypothetically, 25 U.S.C.A. § 357 would allow the condemnation of easements through allotted lands in the absence of a showing by the condemnor that substantial hardship, expense and inconvenience to the general public would result if the proposed electric transmission line were to be routed entirely through non-Indian land. This Court cannot ignore the antagonism between 25 U.S. C.A. § 357 (originally enacted as Section 3 of the Act of March 3, 1901) and the 1948 Act. When the earlier statute is inconsistent with a subsequent statute, the two cannot have concurrent effect and the later act, in this case 25 U.S.C.A. §§ 323–328, must prevail to the extent of the inconsistency. *See Plains Elec. Gen. & Tr. Co-op. v. Pueblo of Laguna, supra,* 542 F.2d at 1381.

■ The Court holds, therefore, that 25 U.S.C.A. § 357 may not be employed by N.P.P.D. to condemn a right-of-way for a proposed electric transmission line over and across trust lands, including tracts of trust land which have been allotted to individual Indians.

## II. Tracts in Which the Individual Defendants Hold an Interest

■ Pursuant to the above discussion, a somewhat separate ground may be identified which requires denial of N.P.P.D.'s authority to condemn those parcels of land in which the answering individual defendants have undivided interests. The Court is of the opinion that, under the language of 25 U.S.C.A. § 357, entities imbued by a state with the power of eminent domain are au-thorized to condemn only so-called patented lands for public purposes without approval from the Secretary. *See* Comment, Overview of Questions of Access Across Indian Lands, 10 Land & Water L.Rev. 93, 106 (1975). Such lands may be defined as land allotted in severalty to individual Indians, upon which the trust or restrictions against alienation and encumbrance have been terminated. *Id.* at 99. Legal title to all twenty-nine tracts of land sought to be condemned by N.P.P.D. herein is held by the United States in trust for the individual Indian allottees and the Tribe. Since the allotted parcels of land in question have admittedly not been discharged of the trust and freed from all restrictions, *see* 25 U.S. C.A. § 348, said allotments are not subject to condemnation pursuant to 25 U.S.C.A. § 357. As stated by the district court in *Eastern Band of Cherokee Indians v. Griffin,* 502 F.Supp. 924, 930 (W.D.N.C.1980):

> Congress provided for condemnation proceedings under 25 U.S.C.A. Section 357, and limited such proceedings to lands which have been allotted to individual Indians ... If these lands had been allotted to the Defendants *with full power of alienation,* then their consent would be necessary or the State would be required to resort to condemnation as provided under 25 U.S.C.A. Section 357. Since these lands have not been allotted to the Defendants with full power of alienation, then the right of way for highway purposes could only be acquired by the grant of permission by the Secretary of the Interior as provided by 25 U.S.C.A. § 311. [Emphasis supplied.]

Similarly, the right-of-way for transmission line purposes in the present case could only be acquired by a grant of permission from the Secretary as provided by 25 U.S.C.A. §§ 323–328, in view of the fact that these Indian allottees do not possess full and complete power of alienation over the lands in which they own undivided interests. *See also United States v. Wilson,* 523 F.Supp. 874, 897 (N.D.Iowa 1981) (once patented in fee, Indian lands lose their status as trust lands and are governed by State law).

### III. Tracts in Which the Winnebago Tribe Holds an Interest

Assuming arguendo that 25 U.S.C.A. §§ 323–328 and 25 U.S.C.A. § 357 provide independent methods of obtaining rights-of-way for electric transmission line purposes, 25 U.S.C.A. § 357 by its express terms applies only to "[l]ands allotted in severalty to Indians." It may be recalled that, prior to initiation of this litigation, the heirs of several individual Indian allottees, while reserving life estates, deeded to the United States in trust for the Tribe certain undivided interests in the lands along the route of N.P.P.D.'s proposed transmission line. The Bureau of Indian Affairs of the Interior Department properly processed, filed, recorded and approved these conveyances, which involved approximately fifteen of the twenty-nine tracts sought to be condemned pursuant to 25 U.S.C.A. § 357. N.P.P.D. contends that such deeds are void because the Indian defendants failed to secure the specific approval of the Secretary.

■ N.P.P.D.'s contention is without merit. The Indian lands at issue are governed solely by federal law and, since legal title to the parcels sought to be condemned is held in trust by the United States, any attempted conveyance or alienation must conform to the requirements of federal law. *See Smith v. McCullough, supra,* 270 U.S. at 459, 46 S.Ct. at 339; *Bunch v. Cole,* 263 U.S. 250, 252, 44 S.Ct. 101, 102, 68 L.Ed. 290 (1923); *Bennett County v. United States, supra,* 394 F.2d at 11 (8th Cir. 1968). Alienation of restricted Indian lands may only be accomplished pursuant to Congressional authorization and according to the rules and regulations prescribed by the Secretary of the Interior. *Bailey v. Banister,* 200 F.2d 683, 685 (10th Cir. 1952).

■ Title 25, U.S.C.A. § 465 authorizes the Secretary to acquire any interest in lands, including trust or otherwise restricted allotments, through, inter alia, purchase, gift or assignment. *See Chase v. McMasters,* 573 F.2d 1011, 1014 n.1, 1016 (8th Cir.), *cert. denied,* 439 U.S. 965, 99 S.Ct. 453, 58

L.Ed.2d 423 (1978). Title 25, C.F.R. § 121.-22(a) (1981) provides in part that trust or restricted lands or any interest therein may not be conveyed without the approval of the Secretary. 25 C.F.R. § 121.1(a) (1981) defines "Secretary" to include an authorized representative of the Secretary of the Interior acting under delegated authority.

The Court finds that it was pursuant to these statutes and administrative regulations that several individual Indians transferred their interests to the United States in trust for the benefit of the Tribe. Said deeds, having been duly approved by the Bureau of Indian Affairs are, therefore, valid, and the Tribe thereby acquired undivided interests in approximately fifteen of the twenty-nine parcels which N.P.P.D. seeks to condemn. A narrow construction of the language of 25 U.S.C.A. § 465, or the regulations promulgated thereunder, would run "counter to the principle that ambiguous statutes passed for the benefit of Indian tribes are to be interpreted in a light most favorable to Indians." *Chase v. McMasters, supra,* 573 F.2d at 1016.

■ Having determined the above conveyances by individual interest holders to be valid under federal law, the Court now turns to the question of the legal authority of N.P.P.D. to condemn the tracts of land in which the Tribe holds undivided interests. It is undisputed that unallotted tribal lands held in trust by the United States may not be condemned by a state. *United States v. 10.69 Acres, supra,* 425 F.2d at 318 n.1; *United States v. 2,005.32 Acres of Land, etc.,* 160 F.Supp. 193, 199 (D.S.D.1958). N.P.P.D., while conceding that it has no right to condemn tribal lands, argues that the interests obtained by the Tribe in approximately fifteen allotments do not create tribal lands, but instead that such parcels remain allotted lands subject to condemnation under 25 U.S.C.A. § 357.

■ The Court believes, however, that the term tribal lands properly includes land in which the tribe has a protectable interest.[7] 25 C.F.R. § 161.1(d) (1981) in pertinent part provides:

---

**7.** "It has been held that the purpose of 'providing land for Indians' is served by an exchange

Tribal land means land or any interest therein, title to which is held by the United States in trust for a tribe, or title to which is held by any tribe subject to Federal restrictions against alienation or encumbrance . . . .

This longstanding administrative interpretation is entitled to great deference, *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, *rehearing denied*, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965), and should be sustained unless it is plainly erroneous, *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). N.P.P.D.'s restrictive notion of tribal land is wholly incompatible "with the new federal policy of encouraging the preservation of Indian communities with commonly held lands." *United States v. John, supra,* 437 U.S. at 646, 98 S.Ct. at 2547.

Congress, through passage of the 1948 Act, 25 U.S.C.A. §§ 323–328, established the method for the acquisition of rights-of-way across tribal lands for the construction of an electric transmission line.[8] Under the 1948 Act, the Secretary's discretion to grant rights-of-way over tribally owned lands is limited in the case of tribes organized pursuant to the I.R.A. and related laws, by requiring "consent of the proper tribal officials." 25 U.S.C.A. § 324. Section 16 of the I.R.A., 25 U.S.C.A. § 476, preserves the power of a tribe to prevent, inter alia, the disposition or encumbrance of tribal interests in lands without the consent of the tribe. *See* 25 C.F.R. § 161.3(a) (1981) (requiring written consent of the tribe as a precondition to grant of a right-of-way).

The Winnebago Tribe of Nebraska is admittedly organized under the I.R.A. Article VIII, Sections 1 and 2 of the tribal constitution implement 25 U.S.C.A. § 476 by vesting in the tribal council the power to

prevent the disposition of tribal lands or interest in lands. It is uncontroverted in this case that the Tribe has not consented to the granting of the easements sought by N.P.P.D. In point of fact, the Tribe has expressly indicated through the passage of one or more resolutions that it opposes the proposed electric transmission line and the condemnation of tribal land. Condemnation of the approximately fifteen tracts in which the Tribe presently has undivided interests would amount to an unpermitted disposition of tribal lands. N.P.P.D., therefore, possesses no authority under 25 U.S.C.A. § 357 to condemn an easement through those lands in which the Tribe holds undivided interests.

## CONCLUSION

To assure the utmost fairness in transactions between the United States and its Indian wards, any intent to deprive Indian tribes of their rights in land, or otherwise bring about the extinguishment of Indian title, either by grants in abrogation of existing treaties or through other Congressional legislation must be clearly and unequivocally stated and language appearing in such grants and statutes is not to be construed to the prejudice of the Indians.

*Bennett County v. United States, supra,* 394 F.2d at 11–12.

Consonant with the above principles, it becomes evident that condemnation proceedings under 25 U.S.C.A. § 357 should not be allowed to function as a vehicle of convenience by which state-authorized condemnors may accomplish the acquisition of rights-of-way across trust lands in circumvention of subsequent, more protective legislation, and in the face of Indian opposition. It must be noted, however, that the

---

transaction whereby an individual Indian transfers allotted land to the tribe in exchange for an assignment of occupancy rights in the same or in another tract, since the tribe through this transaction acquires a definite interest in the land over and above the transferor's retained occupancy right." U. S. Department of the Interior, Federal Indian Law 623 (1958).

8. The Court does not consider it necessary in this memorandum to address the potential applicability of 43 U.S.C.A. §§ 959 and 961. For a discussion of those statutes, *see United States v. Oklahoma Gas & Electric Co.*, 318 U.S. 206, 211–15, 63 S.Ct. 534, 536–38, 87 L.Ed. 716 (1943).

Court by this memorandum expressly does not repeal by implication 25 U.S.C.A. § 357, which retains vitality to condemn land falling within the classes enumerated at Section I of the discussion herein.

For all of the foregoing reasons, the Court holds that 25 U.S.C.A. § 357 does not authorize N.P.P.D. to bring an action to condemn either the tracts of trust land in which the individual Indian defendants have undivided interests or the tracts of trust land in which the Tribe has undivided interests. The parties' other contentions have been put to rest by this disposition. A separate order dismissing N.P.P.D.'s complaint with prejudice will be entered this date.