The OGLALA SIOUX TRIBE OF the PINE RIDGE INDIAN RESERVATION, Appellant,

v.

William HALLETT, In His Official Capacity as Commissioner of Indian Affairs; Cecil D. Andrus, In His Official Capacity as Secretary of the Interior; Forrest Gerard, In His Official Capacity as Assistant Secretary of the Interior for Indian Affairs; William Benjamin, In His Official Capacity as Acting Area Director of the Bureau of Indian Affairs for the Aberdeen Area; Anthony Whirlwind Horse, In His Official Capacity as Superintendent of Pine Ridge Agency; and Richard Tall,

Marilyn Walker, Intervenor Below, Appellees.

No. 82–1756.

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1983.

Decided May 20, 1983.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., for Federal appellees.

Mario Gonzalez, Pine Ridge, S.D., for appellant.

Before HEANEY, ROSS and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

The Oglala Sioux Tribe [Tribe] brought this action in the United States District Court for the District of South Dakota seeking declaratory, injunctive, and other appropriate relief from the decision of the Secretary of the Interior [Secretary] approving Richard Tall's application for fee patents on certain lands within the exterior boundaries of the Pine Ridge Indian Reservation. The Tribe named the Secretary and other persons in the Department of the Interior, in their official capacities, the United States, and Richard Tall as defendants. The district court granted summary

judgment in favor of all defendants, 540 F.Supp. 503. The Tribe appeals and we affirm.

In March of 1976, Richard Tall, a member of the Tribe, applied to the Bureau of Indian Affairs of the Department of the Interior [BIA] for fee patents—in essence, legal title—on three allotments of land held in trust for him by the United States.[1] Pursuant to a tribal policy favoring expansion of tribal ownership of land within the reservation, the Tribal Council passed Ordinance 76-05 on May 11, 1976, which the Tribe asserts restricts applications for fee patents on trust lands by Tribe members.[2] On May 21, 1976, the Pine Ridge Agency of the BIA informed the Tribe's Executive Committee of Tall's application, apparently pursuant to 25 C.F.R. § 152.2 (1982),[3] which would give the Tribe a reasonable opportunity to purchase the land from Tall prior to the Secretary's decision whether to grant his application for a patent. The Pine Ridge Agency later denied Tall's application, on March 23, 1977. Tall appealed to the BIA Area Director in the Aberdeen Area Office, who reversed the decision of the Pine Ridge Agency on May 31, 1978. The Tribe intervened in the administrative proceedings at this point and appealed first to the Commissioner of Indian Affairs and then to the Interior Board of Indian Appeals [IBIA]. The IBIA rendered the final decision of the Department of the Interior on September 7, 1979, holding that "it was not error for the Bureau of Indian Affairs to approve Richard Tall's fee patent applications." *Administrative Appeal of Oglala Sioux Tribe,* 7 I.B.I.A. 188, 211 (1979). The Tribe then filed the instant action in federal district court.

The district court granted summary judgment against the Tribe on May 27, 1982.[4] The court held that the Secretary had discretion to approve Tall's application under 25 U.S.C. § 483 (1976), which was not affected by tribal ordinances to the contrary. *Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Hallett,* 540 F.Supp. 503, 505 (D.S.D.1982). In addition, the court held that, even if federal statutes and regulations required the Secretary to find that Tall was "competent" prior to approving his application, the Secretary possessed sole discretion to make such a finding, the Tribe might not have standing to question Tall's competency, the Tribe in fact failed to con-

---

1. On appeal, the parties do not dispute the facts that the allotments in issue were originally awarded to individual Sioux Indians sometime after the Sioux Agreement of 1889, ch. 405, 25 Stat. 888 (1889), providing for individual allotments of land on the Pine Ridge Indian Reservation, and that Tall acquired them at a later date.

2. Ordinance 76-05 reads in pertinent part:

 Section 1. No trust land located within the exterior boundaries of the Pine Ridge Indian Reservation may be sold except to the Oglala Sioux Tribe or with the approval of the Oglala Sioux Tribe in accordance with the provisions of this Ordinance.

 Section 2. Any member who wishes to sell trust land on the Pine Ridge Indian Reservation and any member wishing to buy such land shall, before submitting their application to the Bureau of Indian Affairs, apply to the Executive Committee for approval of the transaction.

 \*　　\*　　\*　　\*　　\*　　\*

 Section 4. The Executive Committee may disapprove any applications \* \* \* if it finds that the transaction would not be in the best interest of the Tribe. In such case the Executive Committee shall set forth the reasons for its decision.

 For purposes of this appeal, we accept the Tribe's assertion that this ordinance is intended as a restriction on applications for fee patents even outside the context of a sale of the land.

3. Bureau of Indian Affairs [BIA] regulations applicable to this case were redesignated, without substantive change, from 25 C.F.R. Part 121 to 25 C.F.R. Part 152 at 47 Fed.Reg. 13327 (March 30, 1982). We cite to the current regulations herein. 25 C.F.R. § 152.2 (1982) provides that the Secretary of the Interior [Secretary] may withhold action on an application which would remove Indian land from trust status to the detriment of other Indians or tribes "until the other Indians or the tribes so affected have had a reasonable opportunity to acquire the land from the applicant." This regulation does not restrict the Secretary's discretion to deny the application for other reasons if a tribe fails to acquire the land from the applicant.

4. The memorandum opinion of the district court is reported at 540 F.Supp. 503 (D.S.D. 1982).

test Tall's competency before the IBIA, and the administrative record would support a finding that Tall was competent. *Id.* at 505, 506 & n. 5. Finally, the court found that any special restrictions on the sale of one of the allotments which Tall acquired under the Act of August 8, 1968, Pub.L. No. 90–468, 82 Stat. 663 (1968), did not limit the Secretary's power to issue a fee patent thereon. *Id.* at 506.

 On appeal, the Tribe's position is that the Secretary has no authority to issue fee patents except to the Tribe as a matter of federal law and that, even if federal statutes give the Secretary discretion to issue fee patents to individuals, the Secretary is bound in exercising that discretion by the provisions of tribal law. In support of this position, the Tribe raises four main contentions: (1) that the allotments in issue are not held under the provisions of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461 *et seq.* (1976 & Supp. IV 1980), and thus are not subject to the award of fee patents under 25 U.S.C. § 483 (1976); (2) that, assuming these allotments are subject to the provisions of section 483, Tall does not intend to sell the land and section 483 applies only when a fee patent is approved pursuant to a sale of trust land; (3)

that, even if the Secretary has discretion to issue Tall a fee patent under section 483, the Secretary is bound by Ordinance 76–05 in exercising that discretion; and (4) that the Act of August 8, 1968, Pub.L. No. 90–468, 82 Stat. 663 (1968), requires a sale within ten years of Tall's acquisition of one allotment which he bought under that act, with a right of first preference in the Tribe to purchase that land, in order to avoid mandatory continuation of the trust on that allotment under 25 U.S.C. § 464 (Supp. IV 1980).[5] We disagree with each of these contentions.

The Tribe's first contention is that 25 U.S.C. § 483 (1976), under which the Secretary approved Tall's application, does not apply to Tall's allotments here at issue. Section 483 reads:

The Secretary of the Interior, or his duly authorized representative, is authorized in his discretion, and upon application of the Indian owners, to issue patents in fee, to remove restrictions against alienation, and to approve conveyances, with respect to lands or interests in lands held by individual Indians under the provisions of sections 461, 462, 463, 464, 465, 466 to 470, 471 to 473, 474, 475, 476 to 478, and 479 of this title [the Indian Reorganization Act

**5.** The Tribe also contends that the district court erred in denying the Tribe's motion for leave to file an amended complaint under Fed.R.Civ.P. 15(b). Rule 15(b), on its face, serves to conform the pleadings to the evidence "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties." We are not convinced that this rule can be used in a pretrial motion as the Tribe contends. Assuming it could, however, we cannot say that the district court abused its discretion in denying the Tribe's motion, given the extraneous facts and law cited in the proposed amended complaint and the history of this case prior to the motion. Moreover, the Tribe admitted at oral argument that all issues raised in the amended complaint were in effect decided by the district court, so any error that might have been committed in the court's Rule 15(b) ruling would be harmless.

In addition, the Tribe raised several subsidiary issues in its brief and at oral argument, *e.g.*, whether Richard Tall sought the fee patents in order to circumvent other federal law, whether 25 U.S.C. § 464 (Supp. IV 1980) prohibits the descent or devise of trust land to Tall's non-In-

dian heirs, whether Tall as a Tribe member is bound by Ordinance 76–05, whether Tall must exhaust tribal remedies prior to seeking relief from that ordinance, and whether the ordinance complies with the Oglala Sioux Tribe Constitution. Except to the extent necessary to decide the main issues in this case, we do not address these subsidiary questions. This case is one against Department of the Interior officials and Richard Tall to review the legality of the Secretary's approval of Tall's application for fee patents. This is a matter of federal law; indeed, the only relief requested against Tall individually is a declaration that he is subject to Ordinance 76–05. Such a declaration is unnecessary herein because the power of the Secretary is not dependent on tribal law and because the Tribe apparently has not attempted to enforce its ordinance against Tall in its own courts, irrespective of the power of the Secretary to issue patents once Tall makes application therefor. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55–56, 98 S.Ct. 1670, 1675–76, 56 L.Ed.2d 106 (1978) (tribes can make substantive law covering internal matters and enforce such in their own forums).

of 1934], or subchapter VIII of this chapter.

*Id.*

The Tribe claims that the "held * * * under" language in this section indicates that Congress only authorized the Secretary to issue fee patents on lands put in trust for individual allottees after purchase with funds appropriated under Section 5 of the Indian Reorganization Act of 1934. *See* 25 U.S.C. § 465 (1976). Considering the history and purpose of section 483, we cannot agree.

The allotments at issue in the present case apparently were first awarded near the turn of the century pursuant to the Sioux Agreement of 1889, ch. 405, 25 Stat. 888 (1889). *See supra* note 1. Federal policy at that time was to allot parcels of reservation land to individual Indians; the individual allottees would eventually obtain legal title to their allotments and no longer be dependent on tribes and reservations for their subsistence. *See generally Mattz v. Arnett,* 412 U.S. 481, 496–497, 93 S.Ct. 2245, 2253–54, 37 L.Ed.2d 92 (1973). Section 11 of the 1889 agreement provided that, once allotments were made, the Secretary would issue patents in the name of the allottees which the United States would hold in trust for a period of twenty-five years. Sioux Agreement of 1889, *supra,* 25 Stat. at 891. It also required the United States to issue fee patents to the individual allottees at the end of the trust period. *Id. See also* 25 U.S.C. § 349 (1976) (Secretary later authorized to issue fee patents prior to expiration of trust period). The President, however, could extend the trust period, in his or her discretion, by terms not to exceed ten years. Sioux Agreement of 1889, *supra,* § 11, 25 Stat. at 891. Such executive directives in fact extended the trust period under the Sioux Agreement of 1889 until the time that Congress enacted the Indian Reorganization Act in 1934.

■ The 1934 legislation, which applies only to tribes voting to adopt its provisions, 25 U.S.C. § 478 (1976), terminated further allotment of Indian reservation land to individual Indians, *id.* § 461, and extended "existing periods of trust placed upon any Indian lands" until further action by Congress to the contrary, *id.* § 462. Section 4 of the 1934 statute also stated that, except as otherwise provided therein, "no sale, devise, gift, exchange, or other transfer of restricted Indian lands * * * shall be made or approved." 25 U.S.C. § 464 (Supp. IV 1980). The Tribe adopted this legislation and asserts that section 4 (25 U.S.C. § 464) froze all transactions involving trust lands which were not explicitly authorized under the Indian Reorganization Act, including the issuance of fee patents to individual Indian allottees, such as Tall, by the Secretary.

Assuming that Section 4 of the Indian Reorganization Act did limit the Secretary's authority to issue fee patents to individual allottees,[6] Congress lifted that limitation in

---

**6.** The district court and the parties assume that Section 4 of the Indian Reorganization Act of 1934, 25 U.S.C. § 464 (Supp. IV 1980), restricted the Secretary from issuing most fee patents prior to the end of the trust period applicable to those patents, contrary to the law before 1934 which authorized the issuance of fee patents whenever the Secretary was "satisfied that any Indian allottee [was] competent and capable of managing his or her affairs," 25 U.S.C. § 349 (1976); *County of Thurston, Nebraska v. Andrus,* 586 F.2d 1212, 1218–1219 (8th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979) (25 U.S.C. § 349 amended in 1906 to allow Secretary to issue fee patent prior to expiration of trust period). The congressional debates on the 1934 statute indicate, however, that section 4 was aimed primarily at preventing the sale of individual allotments to non-Indians when an allottee died with heirs too numerous to allow a reasonable partition among them, 78 Cong.Rec. H11727–11728 (daily ed. June 15, 1934) (statement of Rep. Howard), rather than at restricting the issuance of fee patents to allottees on proper application therefor, *id.* at H11730 ("These provisions do not apply to unrestricted Indian lands nor to any Indian owner of restricted land who may be declared competent by the Secretary of the Interior."). Nonetheless, for purposes of this appeal we accept that, at least prior to 1948, section 4 did restrict the Secretary's power to issue fee patents. *See* Extent of Secretarial Authority to Issue Patent in Fee—Indian Reorganization Act, II Op.Sol., Department of the Interior, Indian Affairs, M–36003, 1527, 1528 (June 7, 1950) (assuming that limitations in section 4 applied to the Secretary).

1948, as to trust lands "held * * * under" the Indian Reorganization Act of 1934, by passing 25 U.S.C. § 483 (1976). The Tribe would have us read section 483 to apply only to lands allotted after purchase under the 1934 legislation, which appropriated funds for land acquisition for Indians and tribes, see 25 U.S.C. § 465 (1976), thereby excluding Tall's allotments from the coverage of the section. Section 483 is broad enough on its face, however, to include allotments awarded prior to the Indian Reorganization Act of 1934. Were it not for the 1934 legislation, the trust period for the allotments now held in Tall's name would have expired years' ago, absent further presidential extensions. See *County of Thurston, Nebraska v. Andrus,* 586 F.2d 1212, 1219 (8th Cir.1978), *cert. denied,* 441 U.S. 952, 99 S.Ct. 2181, 60 L.Ed.2d 1057 (1979) (trust period on Indian allotments extended indefinitely under the 1934 statute). Thus, the allotments would not be "held" by the United States at all without the Indian Reorganization Act. Therefore, they are "held * * * under" that act just as much as lands purchased and put in trust after 1934. See *Sampson v. Andrus,* 483 F.Supp. 240, 242 (D.S.D.1980) (section 483 intended to ease restrictions on land transfer "imposed by" the Indian Reorganization Act); Extent of Secretarial Authority to Issue Patent in Fee—Indian Reorganization Act, II Op.Sol., Department of the Interior, Indian Affairs, M–36003, 1527, 1528 (June 17, 1950) (Solicitor White expressly holding that section 483 covers all land held in trust for Indian Reorganization Act tribe members).[7]

The Tribe's second contention is that, even if section 483 covers Tall's allotments, that section authorizes the Secretary to issue fee patents only pursuant to a sale of the land. Because Tall does not allege that he intends to sell his allotments, the Tribe asserts that the "freeze" imposed by 25 U.S.C. § 464 (Supp. IV 1980) still applies. Perhaps the primary purpose of section 483 was to allow Indians to sell their individual allotments. See S.Rep. No. 1232, 80th Cong., 2d Sess. 1, *reprinted in* 1948 U.S. Code Cong.Serv. 1541, 1541 (Senate Committee on Interior & Insular Affairs describing section 483 as a bill "authorizing the sale of individual Indian lands"). We refuse, however, to restrict the broad language of the 1948 legislation to that one purpose. Section 483 expressly authorized the Secretary "to issue patents in fee, to remove restrictions against alienation, and to approve conveyances." 25 U.S.C. § 483 (1976). Nowhere did it limit the issuance of fee patents to applications made pursuant to a desire to convey the land. Moreover, requiring Tall, a Tribe member, to immediately sell his land in order to receive a fee patent might be inconsistent with federal policy since 1934 of keeping most Indian lands under Indian ownership. See *Mattz v. Arnett, supra,* 412 U.S. at 496 n. 18, 93 S.Ct. at 2254 n. 18; *Conroy v. Conroy,* 575 F.2d 175, 181 (8th Cir.1978).[8]

---

7. In support of the contention that section 483 does not apply to allotments put in trust prior to 1934, the Tribe cites the title of section 483 as recorded in *United States Statutes at Large,* ch. 293, 62 Stat. 236 (May 14, 1948), which refers to Indian land "acquired under" the Indian Reorganization Act, and language in the report of the House Committee on Public Lands on section 483, H.R.Rep. No. 1688, 80th Cong., 2d Sess. 2 (1948), which likewise refers to lands "acquired" under the Indian Reorganization Act. These isolated, general references do not detract from the plain language of the 1948 legislation. Moreover, the same House Report cited by the Tribe contains a letter from then Secretary of the Interior J.A. King explaining section 483 and using the "held under" language which in fact appears in that section. H.R.Rep. No. 1688, *supra,* at 2.

8. The Tribe also argues that the Secretary failed to make a proper finding that Tall was competent prior to approving his application. BIA regulations provide that "[a]n application may be approved and fee patent issued if the Secretary, in his discretion, determines that the applicant is competent." 25 C.F.R. § 152.5(a) (1982). "Competent" is defined in the BIA regulations in the context of one's ability to manage business affairs with a "reasonable degree of prudence and wisdom." 25 C.F.R. § 152.1(e) (1982). These regulations cite 25 U.S.C. § 483 (1976) (the 1948 legislation discussed above) as one source of authority. From the regulations and the fact that the Secretary's authority in this case comes from section 483, the Tribe asserts that the Secretary should have conducted a formal hearing on Tall's competency, in which the Tribe could

The Tribe's third contention is that the Secretary is bound by Tribal Ordinance 76–05 in exercising whatever discretion which otherwise exists under section 483. The Secretary approved the Tribe's constitution and by-laws in January of 1936, therein ordering all officers and employees of the Department of the Interior "to abide by the provisions of the said constitution and by-laws." See Constitution and By-Laws of the Oglala Sioux Tribe of the Pine Ridge Reservation of South Dakota, at 21 (Joint Appendix to Briefs 220, 241). The Tribe contends that the Secretary's "order" approving the constitution in 1936 binds the Secretary to observe Ordinance 76–05, enacted under that constitution, because the constitution specifically empowered the Tribal Council "to regulate * * * the use and disposition of property upon the reservation, provided that any ordinance directly affecting non-members of the tribe shall be subject to review by the Secretary of the Interior." Constitution and By-Laws of the Oglala Sioux Tribe, supra, Article IV, Section 1(m), at 6 (Joint Appendix to Briefs, supra, at 226). Assuming without deciding that Ordinance 76–05 is valid as to individual Tribe members under Article IV, Section 1(m) of the tribal constitution, however, we cannot agree that the Secretary is perforce also bound by virtue of the 1936 order.

■ Initially, we agree that the Secretary should give consideration to tribal policy regarding land distribution, for example the policy of maintaining a stable Indian land base reflected in Ordinance 76–05, in

exercising the discretion to issue fee patents to individuals under section 483. While the 1936 order expressly declared that regulations "heretofore promulgated" were inapplicable insofar as they conflicted with the tribal constitution and by-laws, however, there simply is no indication in that order that the Secretary was agreeing to be bound by all tribal ordinances enacted thereafter. Constitution and By-Laws of the Oglala Sioux Tribe, supra, at 21 (Joint Appendix to Briefs, supra, at 241). In any event, we are aware of no authority whereby the Secretary could, without congressional consent, agree to relinquish all discretion which Congress might create years after such agreement. Therefore, as a matter of federal law, we cannot say that the Secretary is conclusively bound by Ordinance 76–05.

■ The Tribe's final contention involves one of Tall's allotments acquired under the Act of August 8, 1968, Pub.L. No. 90–468, 82 Stat. 663 (1968). The 1968 statute provided for Indian reacquisition of lands on the Pine Ridge Indian Reservation which had been purchased by the United States for an Air Force gunnery range during World War II, but which were in excess of the needs of the United States, or the acquisition of other tracts "in lieu" of such excess lands. One of Tall's allotments is an "in lieu" tract. Public Law 90–468 provided that "[t]itle to the tract purchased [under this statute] shall be held in trust for the purchaser if it was held in trust status at the time the tract was acquired by the

participate, prior to approving Tall's application. We agree with the district court, however, that 25 U.S.C. § 483 (1976) did not explicitly require the Secretary to find Tall competent prior to approving his application, and, insofar as the regulations may require such a finding, the Tribe's standing to contest the Secretary's decision on this matter is questionable. See Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Hallett, 540 F.Supp. 503, 505–506 (D.S.D.1982). Assuming that the Secretary must make a competency finding and that the Tribe is a proper party to question the Secretary's fulfillment of this duty, however, the decision regarding Tall's competency is a matter reserved to the sound discretion of the Secretary, see 25 C.F.R. § 152.5(a) (1982), and the

Interior Board of Indian Appeals [IBIA] made that decision on behalf of the Secretary herein, Administrative Appeal of Oglala Sioux Tribe, 7 I.B.I.A. 188, 204 (1979) ("no one questions that Richard Tall, who has previously received patents in fee to former trust lands, satisfies the competency requirements"). Neither the statutes involved nor the BIA regulations require a formal hearing on the question of competency, and, on the record before us, we cannot say that the IBIA abused the Secretary's discretion in finding Tall competent. See 5 U.S.C. § 706 (2)(A) (1976). See also Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Hallett, supra, 540 F.Supp. at 506 n. 5 (sufficient evidence in administrative record to support a finding that Tall is competent).

United States." *Id.* § 3(b)(3). In addition, the statute required that "[i]f a tract purchased under this subsection is offered for resale during the following ten-year period, the tribe must be given the first right to purchase it." *Id.* The Tribe contends that these provisions require a resale within ten years of Tall's acquisition of his "in lieu" tract, with a right of first preference to purchase in the Tribe, in order to avoid the "freeze" provisions of 25 U.S.C. § 464 (Supp. IV 1980) (the Indian Reorganization Act of 1934). We have already held, however, that those "freeze" provisions were lifted by Congress in 1948 under section 483, and nothing in Public Law 90–468 indicates that the return to trust status of "in lieu" lands is not subject to the Secretary's discretion to issue fee patents recognized in that 1948 legislation. Furthermore, we agree with the district court that the application for and issuance of a fee patent on Tall's "in lieu" tract, without more, does not constitute an "[offer] for resale" triggering the Tribe's right of first preference under Public Law 90–468.[9] *See Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Hallett, supra,* 540 F.Supp. at 506.

For the foregoing reasons, we disagree with each of the contentions raised by the Tribe which might be a basis for overriding the Secretary's approval of Tall's application for fee patents on his trust lands. The Secretary was aware of the tribal policy reflected in Ordinance 76–05, but was within the discretion created by federal statute in subordinating that policy to Tall's individual interests herein. Therefore, the district court's grant of summary judgment is affirmed.

---

9. The district court's opinion and the Tribe's brief on appeal indicate that the ten-year period on Tall's "in lieu" land expired on February 7, 1983. *See Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Hallett, supra,* 540 F.Supp. at 506. Because we hold that the issuance of fee patents on trust lands acquired under the Act of August 8, 1968, Pub.L. No. 90–468, 82 Stat. 663 (1968), does not trigger the Tribe's right of first preference, we need not discuss whether the expiration of the ten-year period pending appeal of this case affected the rights of the Tribe under that statute.